Three of the six members of the Pike County Commission petitioned for a writ of mandamus directing the Pike County Circuit Court to vacate its order in favor of the other three members of the Commission in a declaratory judgment action.[1]
A brief review of the legislation giving rise to this controversy is necessary for a complete understanding of the parties' contentions.
The Code of Alabama of 1852 authorized "courts of county commissioners," composed of the judge of probate ("as principal judge") and four commissioners, to transact a variety of business on behalf of the county, with "all matters where the court [was] divided" to be "determined by the judge of probate." These provisions were adopted, unamended, by subsequent codes. See Tit. 9, Chap. VII, §§ 697, 707 (Code of 1852); Tit. 9, Chap. VII, §§ 825, 835 (Code of 1867); Tit. 9, Chap. VIII, §§ 739, 749 (Code of 1876); Tit. 9, Chap. VII, §§ 819, 829 (Code of 1886-87).
The corresponding provisions of the Civil Code of 1896 (Chap.22, §§ 951, 961) were identical to the earlier sections except that the provision setting the commissioners' term of office at four years was amended by the addition of "and until their successors are elected and qualified." These provisions remained the same in the 1923 Civil Code, at Art. 1, §§ 6748, 6765; and in Tit. 12, at §§ 5 and 21, Ala. Code of 1940 (Recomp. 1958).
A 1980 Act amended the "county commission" provisions of the Code (now codified at Ala. Code 1975, § 11-3-1 et seq.). The 1980 amendment, however, did not affect 1) the basic composition of the commission ("the judge of probate, who shall serve as chairman, and four commissioners"); 2) the commissioners' terms of office ("for four years . . . and until their successors are elected and qualified"); or 3) the method for preventing a vote stalemate among the commissioners ("In all matters where the county commission is divided, the same must be determined by the chairman of the county commission [the judge of probate]."). §§ 11-3-1 and -20.
In 1986, the legislature enacted Act No. 86-323, 1986 Ala. Acts, which redivided Pike County into six (rather than four) districts. Thereafter, the Pike County Commission consisted of six members.
In 1988, Pike County voters ratified Act No. 88-308, which became Amendment 503 to the Alabama Constitution of 1901. Amendment 503 is generally referred to as the "Pike County Government Modernization Amendment." Among other things, it prescribed *Page 425 
that the judge of probate of Pike County was no longer to act as the chairman of the Pike County Commission. In 1989, pursuant to Amendment 503, the legislature adopted Act No. 89-783, which provided that the chairman of the Pike County Commission would no longer be the judge of probate but would "be elected by the qualified electors" of Pike County and would "hold office for a term of four years . . . and until his successor is elected and qualified."
Act No. 93-382, also a local act, made a further change in the method of selecting the chairman of the Pike County Commission:
 "Section 1. In Pike County, the Chair of the Pike County Commission shall be elected from the membership of the commission at the first meeting of the commission after the enactment of this act. The chair shall serve until the first meeting of the commission in November of 1993. Thereafter, annually in the month of November, the Pike County Commission shall elect a chair to serve for one year. Nothing in this act shall be construed to prevent a chair of the commission from seeking consecutive terms."
(Emphasis added.)
Act No. 93-382, which became effective on May 10, 1993, did not include the provisions in Act No. 89-783 setting out the chairman's specific term of office and the holdover provision ("and until his successor is elected and qualified"). Further, although the 1993 act required that the commission chairman be chosen from among the six commissioners, it made no change in the method for resolving a vote deadlock among the commissioners ("determined by the chairman"). The act did, however, 1) provide for the chair to receive a $5,000 salary "in addition to the salary for commissioner as compensation for serving as Chair of the Pike County Commission"; 2) state that its provisions were "severable" and that "[i]f any part of this act is declared invalid or unconstitutional, that declaration shall not affect the part which remains"; and 3) provide that "[a]ll laws or parts of laws which conflict with [Act No. 93382] are repealed."
The petitioners[2] (Larry Meeks, Charlie Harris, and Willie Thomas) and the respondents (Ronald M. Morgan, Wayne Gibson, and Don Wambles) are the Pike County commissioners. Respondent Morgan served as chairman of the commission from November 1994 to November 1995. During the commission's meeting on November 13, 1995, the commissioners were unable to elect a new chairman, each vote ending in a three-to-three tie. The commission met again on November 27, 1995, and again was unable to break the stalemate on the election of a commission chairman. The commissioners chose Petitioner Thomas to preside over the November 27 and December 11 meetings of the commission.
On December 7, 1995, these respondents filed in the circuit court a complaint for a declaratory judgment, claiming that the commission's inability to elect a new chairman had "shut down the operation of the Pike County government." The complaint also alleged that these petitioners had refused to attend meetings of the commission and that the controversy could cause "irreparable damage to the citizens of Pike County" because, the complaint alleged, the commission could not function without a chairman. The complaint asked the circuit court for a judgment declaring that Respondent Morgan could continue as commission chairman and that, pursuant to Ala. Code 1975, §11-3-20, he could cast the tie-breaking vote.[3]
The petitioners filed a motion to continue the hearing set for December 19, attaching copies of the minutes of the November 27 and December 11 meetings of the commission to show that all members of the commission had been present for the meetings and that commission business had been conducted as usual. The petitioners also maintained that there was no "emergency" situation, *Page 426 
contrary to the allegation of the declaratory judgment complaint, because commission business was being carried on and because the next meeting of the commission would not take place until January 8. The trial court denied the motion to continue.
Following the hearing on December 19, the trial court on December 20 issued an order that read, in part, as follows:
"LEGAL ISSUES
 "1. Whether the Pike County Commission is authorized by law to elect a chairman from its membership, which chairman shall serve for a term of one year, and to serve until the elected chairman's successor is duly elected and qualified.
 "2. Whether Ala. Code 1975, § 11-3-20, authorizes the Chairman of the Pike County Commission to break stalemates of the Commission.
"CONTROLLING LAW AND FINDINGS OF FACT:
 "1. In 1989, [Act No. 89-783] affecting the Pike County Commission was passed by the Alabama legislature [, providing] in pertinent part as follows:
 " '[Section 1. Pursuant to Amendment No. 503 to the Constitution of 1901 for Pike County Government Modernization, and to the will of the people of Pike County,] the judge of probate of Pike County shall not serve as chairman of the county commission. . . .'
" '. . . .
 " '[Section 3.] The chairman of the county commission shall be a resident citizen and qualified elector of Pike County. . . . Such chairman shall be elected by the qualified electors of the county at the general election to be held in the year 1994, and every four years thereafter, and shall hold office for a term of four years . . . and until his successor is elected and qualified.'
 "2. In 1993, local legislation affecting the Pike County Commission . . . became law as Act No. 93-382. The primary change made by Act No. 93-382 was [that] the chairman of the Pike County Commission would not be elected by the voters of Pike County, but would be elected from the Pike County Commission membership and would be elected by the Pike County Commission itself. This law provides in pertinent part as follows:
 " '[Section 1.] In Pike County, the Chair of the Pike County Commission shall be elected from the membership of the commission at the first meeting of the commission after the enactment of this act. The chair shall serve until the first meeting of the commission in November of 1993. Thereafter, annually in the month of November, the Pike County Commission shall elect a chair to serve for one year. . . .
" '. . . .
 " '[Section 4.] All laws or parts of laws which conflict with this act are repealed.'
 "3. The purpose of Act No. 93-382 was to change those who could elect the Pike County Commission chairman and to further limit the body from which the chairman could be selected. It was not the intent of the legislature nor the purpose of this legislation to leave the citizens of Pike County without a county commission chairman. In determining the intent of the legislature, a court may look to the history of the statute and the purpose sought to be accomplished. See Bowlin Horn v. Citizens Hospital, 425 So.2d 1065 (Ala. 1982); and Bell v. Pritchard, 273 Ala. 289, 139 So.2d 596
(1962).
 "4. . . . By the general laws of the State of Alabama, the Pike County Commission is required to have a county commission chairman. . . . There presently exists a justiciable controversy regarding the operation of the Pike County Commission and its authority to legally conduct its business without a determination of the above stated 'legal issues.'
 "5. Title 11 of the Code of Alabama allows for the passage of local acts. This, in fact, has been done in Act No. 89-783 and, more recently, in Act No. 93-382. The two acts should be read together, giving each a field of operation to the extent they are not repugnant to each other.
 "In doing so, the court concludes that Act No. 93-382 changed the manner in *Page 427 
which the Pike County Commission chairman is elected, but it did not change the provisions of Act No. 89-783 which provides that the chairman shall serve for a definite term 'and until his successor is duly elected and qualified.'
 "Any other interpretation would produce an absurd and inequitable result . . . and would have the effect of leaving the citizens of Pike County without a legally mandated commission chairman. . . . .
 "The court finds that when the two above specified acts are read together, the Pike County Commission is authorized by law to elect a chairman from itself for a term of one year. This chairman shall serve until his successor is duly elected and qualified.
 "The court further finds that § 11-3-20
authorizes the chairman of the Pike County Commission to break stalemates of the Pike County Commission.
 "IT IS THEREFORE ORDERED that the Pike County Commission is authorized by law to elect a chairman from itself for a term of one year. This chairman shall serve until his successor is duly elected and qualified.
 "IT IS FURTHER ORDERED that § 11-3-20 authorizes the chairman of the Pike County Commission to break stalemates of the Pike County Commission."
The petitioners point out that the trial court concluded that the acts involved here should be read together, "giving each a field of operation to the extent they are not repugnant to each other," so that the provisions of § 11-3-20 and of Act No. 89-783 not expressly changed or repealed by the 1993 act are still viable. This reasoning, say the petitioners, ignores the language of Section 4 of Act No. 93-382, stating that "all laws or parts of laws which conflict with this act are repealed." Further, say the petitioners, the trial court's rationale does not take into consideration that, until the adoption of the 1993 act (providing that the commission chairman was to be chosen from the commission membership), the judge of probate or the commission chairman was never a voting member of the commission except in cases requiring a tie-breaking vote.
The petitioners, then, claim two distinct statutory conflicts: 1) the conflict between Act No. 89-783's holdover provision and the absence of that provision from Act No. 93-382; and 2) the conflict between § 11-3-20's procedure for a vote deadlock and Act No. 93-382's lack of that procedure. The petitioners ask this Court 1) to order the trial court to vacate its order; 2) to declare that Commission Chairman Morgan's term of office — November 1994 through November 1995 — expired after one year, and, because Act No. 93-382 did not include a holdover provision, that Morgan is not entitled to hold that office "until [his] successor is elected and qualified"; and 3) to declare void that portion of § 11-3-20
providing for the chairman of the county commission to determine the outcome of matters "where the commission is divided," because Act No. 93-382 did not give tie-breaking authority to the commission chairman.
The Alleged Conflict Between Act No. 89-783 andAct No. 93-382
Act No. 89-783, enacted pursuant to Constitutional Amendment 503, separated the office of judge of probate from the office of chairman of the Pike County Commission; provided for the compensation, duties, and authority to be given the commission chairman; set out the qualifications for the commission chairman; and set out the procedures for electing a commission chairman ("shall be elected by the qualified electors of the county at the general election"). Section 3 of the act provided that the commission chairman was to "hold office for a term of four years . . . and until his successor is elected and qualified."
According to its title, Act No. 93-382 was enacted to "provide for the election and compensation of the Chair of the Pike County Commission." Although it provided for the annual election of a commission chairman and specifically stated that "[n]othing in this act shall be construed to prevent a chair of the commission from seeking consecutive terms," Act No. 93-382 did not contain the holdover language of previous acts allowing a commissioner (§ 11-3-1) or the chairman (Act No. 89-783) to remain in office "until his *Page 428 
successor is elected and qualified." However, we do not conclude that this "omission" resulted in the repeal of the holdover language of the previous acts.
The petitioners contend that the lack of holdover language in Act No. 93-382 makes the holdover language in Act No. 89-783 "repugnant" to the later enactment's provision limiting the term of the commission chairman to one year. Therefore, say the petitioners, under § 4 of the 1993 Act, the 1989 Act's holdover language has been repealed.
 "Implied repeal of a statute is not favored by the courts and will be found only when the two statutes are so repugnant to, or in such conflict with, one another that it is obvious that the legislature intended to repeal the first statute."
Benson v. City of Birmingham, 659 So.2d 82, 86 (Ala. 1995). Therefore, a better analysis of a reading of these acts together is guided by the following principle:
 "[A]n amendatory act is not to be construed to change the original act or section further than is expressly declared or necessarily implied."
Norman J. Singer, Sutherland Statutory Construction § 22.30, p. 267 (5th ed. 1993).
The holdover language in the 1989 Act was in addition to the language specifying the term of four years for commission chairman. Nothing in the 1993 Act indicates that the legislature intended to repeal the additional holdover provision by changing the commission chairman's term from four years to one year. Further, leaving the commission without a chairman until a successor chairman can be "elected and qualified" can cause unnecessary confusion among the commission members and damaging delays in county business.
The omission of the holdover language in the 1993 Act does not act as an "implied repeal" of that provision. A correct interpretation of the two acts, read in pari materia, is that Act No. 93-382 shortened the term of office of the chairman of the Pike County Commission, but left intact the holdover provision of Act No. 89-783 allowing a commission chairman to remain in office "until his successor is elected and qualified." Therefore, we deny the petitioners the relief they seek with regard to the conflict they allege exists between Act No. 89-783 and Act No. 93-382, and we hold that there has been no repeal, express or implied, of the "holdover" language of Act No. 89-783.
The Alleged Conflict Between § 11-3-20 andAct No. 93-382
The petitioners' second argument for the issuance of the writ of mandamus is that the trial court, by holding that § 11-3-20
is valid and applicable and thus allowing the commission chairman to resolve a deadlocked commission vote, has, in effect (and without authority), directed the outcome of the deadlocked vote for chairman of the Pike County Commission. This, say the petitioners, is an absurd result and is an abuse of the trial court's discretion — they say the court attempted to exercise authority that it does not have (i.e., authority to appoint the new chairman of the Pike County Commission).
 "It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result. . . . It is fundamental . . . that departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question. A construction resulting in absurd consequences as well as unreasonableness will be avoided."
Norman J. Singer, Sutherland Statutory Construction § 45.11, p. 61 (5th ed. 1993).
From 1852 to 1989, the judge of probate, as the "principal judge" of the Pike County Commission, could vote only in case of a vote deadlock among the Pike County commissioners. In 1989, pursuant to Const. Amend. 503 and Act No. 89-783, the chairman of the Pike County Commission was elected by the voters of Pike County to preside over the commission and to assume the responsibilities theretofore given to the judge of probate. The chairman elected pursuant *Page 429 
to the 1989 act, in the same manner as the judge of probate, voted only in the case of a commission vote deadlock. Act No. 93-382, however, amended the procedure for electing a commission chairman, so as to provide that the chairman would be selected by and from the six-member commission.
The conflict alleged by the petitioners illustrates the unjust and absurd result of giving effect to both Act No. 93-382 and § 11-3-20. Any vote deadlock among the six commissioners is now to be determined by the vote of a commission chairman who has already voted on the matter as acommissioner. When both the 1993 act and the 1989 act are given full effect, the chairman is entitled to a second vote in any matter upon which the commission is evenly divided; thus, the business of the Pike County Commission is rendered subject to the whim and control of the current commission chairman. This cannot be the outcome envisioned by the legislature in enacting Act No. 93-382.
There is a clear repugnancy between § 11-3-20 and the later local act, Act No. 93-382. However, this Court has written:
 "[In Baldwin County v. Jenkins, 494 So.2d 584
(Ala. 1986)] this Court was confronted with two statutes dealing with the election and terms of the office of county commissioners. This Court held that the general statute, Code of 1975, § 11-3-1, as amended, having contained the language, 'unless otherwise provided by local law,' manifested a legislative intent that the subject it dealt with not be subsumed within it. . . ."
Stokes v. Noonan, 534 So.2d 237, 239 (Ala. 1988).
Section 11-3-20 begins with these words: "Unless otherwise provided local law." Section 4 of Act No. 93-382 (the local law) states, "All laws or parts of laws which conflict with this act are repealed." With respect to Pike County, Act No. 93-382 is the more recent and more specific statement on the subject of the election, compensation, and term of office for the chairman of the Pike County Commission.
Section 11-3-20, when construed in pari materia with Act No. 93-382, gives the Pike County Commission chairman a second vote and effectively predetermines the outcome of "all matters where the county commission is divided." Therefore, that "part" of §11-3-20 that provides "In all matters where the county commission is divided, the same must be determined by the chairman of the county commission" is repealed, leaving the Pike County Commission without a procedure for breaking a vote deadlock among the commissioners. The relief given the petitioners regarding the alleged conflict between § 11-3-20
and Act No. 93-382 — a declaration that the deadlock resolution procedure of § 11-3-20 is repealed — is granted.
The effect of our holding with regard to the second conflict, however, leaves the Pike County Commission without a procedure for determining "matters where the county commission is divided." This, however, is a matter that must be addressed and resolved by the legislature.
To summarize, then, we hold 1) that as to the alleged conflict between Act No. 89-783 and Act No. 93-382, there has been no repeal of the "holdover" language of Act No. 89-783 and the holdover provision in Act No. 89-783 must be applied together with the provisions of Act No. 93-382; and 2) that that portion of § 11-3-20 authorizing the commission chairman to determine vote deadlocks among the commission members and Act No. 93-382, providing for the election of the commission chairman from the commission membership, are repugnant and that, because the more recent local act must control, the deadlock resolution procedure of § 11-3-20 is repealed as it relates to Pike County.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT GRANTED.
HOOPER, C.J., and SHORES, J., concur.
KENNEDY, J., concurs in the result.
HOUSTON, J., concurs in part and concurs in the result in part.
MADDOX, J., concurs in part and dissents in part.
[1] The petitioners filed an appeal in this Court (Meeks v.Morgan, docket no. 1950579). Determining that the declaratory judgment order was interlocutory, this Court remanded the case to allow the trial judge to enter a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. The trial court did not enter a final judgment, and the appeal was dismissed. See Foster v.Greer Sons, Inc., 446 So.2d 605 (Ala. 1984).
[2] Petitioners in this Court. The briefs often refer to the parties as "petitioners" and "respondents," but the briefs base these references on the parties' positions in the declaratory judgment action in the circuit court.
[3] As was noted earlier, § 11-3-20 provides, in part, that "[i]n all matters where the county commission is divided, the same must be determined by the chairman of the county commission." *Page 430