Four of the nine members of the city council for the City of Montgomery — Cornelius Calhoun, Willie Cook, Janet Thomas-May and James A. Nuckles (hereinafter "the minority") — in their official capacity, sued the mayor of the City of Montgomery, Bobby Bright, in his official capacity, seeking declaratory and injunctive relief. The minority's action was in response to Mayor Bright's veto of an ordinance containing the City of Montgomery's general-fund budget for the 2007 fiscal year. The Montgomery Circuit Court entered a judgment in favor of the minority, and Mayor Bright appealed. We reverse the trial court's judgment and render a judgment for Mayor Bright.
 I. Facts and Procedural History
On August 15, 2006, Mayor Bright submitted a general-fund budget for the 2007 fiscal year (October 1 to September 30) to the city council for its consideration. On November 21, 2006, the council made several amendments to Mayor Bright's proposed budget and adopted it, by a 5-4 vote, as Ordinance 61-2006 ("the first council budget"). On November 27, 2006, Mayor Bright vetoed the first council budget on *Page 494 
the grounds (1) that the first council budget allocated discretionary funds to the council, and (2) that no public meeting for the budget, as amended, was held prior to its passage.
On December 5, 2006, the council, by a 5-4 vote,upheld Mayor Bright's veto of the first council budget. One council member who had voted to adopt the first council budget voted to uphold Mayor Bright's veto. The minority is the four members who voted not to uphold the veto. Mayor Bright then resubmitted to the council the general-fund budget for the 2007 fiscal year. This budget was carried over until the December 19, 2006, council meeting and then was again carried over until the January 2, 2007, council meeting.
On December 29, 2006, the minority sued Mayor Bright, seeking declaratory and injunctive relief. The minority requested that the trial court (1) declare that Mayor Bright does not have the power to veto a general-fund budget that has been approved by a majority of the council, (2) declare Mayor Bright's veto of the first council budget void, (3) declare the first council budget valid, (4) order Mayor Bright to administer the first council budget, and (5) enjoin Mayor Bright from operating under the budget for the 2006 fiscal year, the preceding year's budget.[1] At its meeting on January 2, 2007, the council amended Mayor Bright's proposed budget without increasing the total expenditures and adopted it as Ordinance 2-2007. Mayor Bright approved Ordinance 2-2007 without any objections.
On February 1, 2007, Mayor Bright moved to dismiss the minority's action on the grounds that the complaint stated neither a ground nor a justiciable controversy upon which relief could be granted. The trial court denied the motion. On April 11, 2007, the minority moved for a judgment on the pleadings. The next day, Mayor Bright moved for a summary judgment. The trial court held a hearing on both motions.
On May 10, 2007, the trial court denied Mayor Bright's motion for a summary judgment and entered a judgment in favor of the minority. The trial court's final judgment stated that Act No. 618, Ala. Acts 1973, sets forth the power, authority, and duties of the mayor and council in managing the affairs of the City of Montgomery and that "there is nothing in Act 618 or in the general law that grants to the mayor of the city of Montgomery [the] power or the authority to veto a budget passed by the city council." The trial court ordered that the City of Montgomery must operate under the first council budget.
On May 10, 2007, Mayor Bright moved in the trial court to stay the final judgment pending appeal. The trial court denied the motion. Mayor Bright then filed a notice of appeal to this Court and moved to stay the trial court's final judgment pending appeal. This Court granted the motion to stay, pending resolution of the appeal. Consequently, the City of Montgomery operated under the budget approved on January 2, 2007, Ordinance 2-2007, until the 2007 fiscal year concluded on September 30, 2007. See §§ 5.01 5.10, Act No. 618, Ala. *Page 495 
Acts 1973. Since October 1, 2007, the City of Montgomery has operated under the general-fund budget for the 2008 fiscal year, which the council adopted on or about September 18, 2007.
 II. Standard of Review
Because on the motion for a judgment on the pleadings the trial court considered matters outside the pleadings, the motion was treated as one for a summary judgment, see Rule 12(c), Ala. R. Civ. P., and our summary-judgment standard applies.
"The standard by which this Court will review a motion for summary judgment is well established:
 "`The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989); § 12-21-12(d) [,] Ala. Code 1975. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871
(Ala. 1989).
 "`In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).'"
Payton v. Monsanto Co., 801 So.2d 829, 832-33
(Ala. 2001) (quoting Ex parte Alfa Mut. Gen. Ins. Co.,742 So.2d 182, 184 (Ala. 1999)).
 III. Analysis A. Mootness
The issue of the validity of Mayor Bright's veto of the first council budget is now moot because of the confluence of this Court's stay of the trial court's order nullifying Mayor Bright's veto of Ordinance 61-2006 and the lack of sufficient time to obtain appellate review of the trial court's order.[2] However, there is an exception to the doctrine of mootness in those instances where an issue is capable of repetition, yet evades review. See McCoo v. State,921 So.2d 450, 458 (Ala. 2005) (citing Griggs v. Bennett,710 So.2d 411, 412 n. 4 (Ala. 1998); Ex parte BirminghamNews Co., 624 So.2d 1117 (Ala.Crim.App. 1993); andState ex rel. Kernells v. Ezell, 291 Ala. 440, 444,282 So.2d 266, 270 (1973)). Because the mayor of the City of Montgomery may subsequently assert veto power over a budget in a setting where, once again, judicial review could not be concluded within the confines of the fiscal year to which the budget applied, we *Page 496 
deem this proceeding to fall within the exception to the doctrine of mootness.
 B. Merits 1. Relevant Sections of Act No. 618, Ala. Acts 1973
The City of Montgomery's mayor-council form of government is governed by Act No. 618, Ala. Acts 1973. "In 1973 the legislature enacted Act No. 618, which proposed a mayor-council form of government for the City of Montgomery. . . . Act No. 618 was ratified on November 5, 1974, at a special election called for such purpose." Siegelman v. Folmar,432 So.2d 1246, 1249 (Ala. 1983).
Article III of Act No. 618 is entitled "The Council," and § 3.07, entitled "Powers," provides, in pertinent part:
 "All powers of the city, including all powers vested in it by this act, by the laws, general and local, of the state, and by Title 62 of the Code of Alabama of 1940, as amended, and the determination of all matters of policy, shall be vested in the council. Without limitation of the foregoing, the council shall have power to:
 ". . . .
 "(b) Adopt the budget of the city.
 ". . . ."
Section 3.15, entitled, "Meetings, passage of ordinances, etc.," provides for regular public meetings of the council, at which a majority of the council members constitutes a quorum. Section 3.15 further provides that "the affirmative vote of a majority of those members present, shall be sufficient for the passage of any resolution, by-law or ordinance . . . or the exercise of any of the powers conferred upon it by the terms of this act or by law. . . ." However, § 3.15 limits this authority, stating, among other things: "No resolution, by-law or ordinance . . . appropriating any money for any purpose . . . shall be enacted except at a regular public meeting of said council or an adjournment thereof." Section 3.15 also provides: "No ordinance of permanent operation shall be passed at the meeting at which it was introduced except by unanimous consent of all members of the council present. . . ."
Section 3.15 further provides:
 "[A]ll ordinances or resolutions, after having been passed by the council, shall by the clerk be transmitted within forty-eight (48) hours after their passage to the mayor for his consideration, who, if he shall approve thereof, shall sign and return the same to the clerk, who shall publish them, if publication thereof is required, and such ordinances and resolutions shall thereupon become effective and have the force of law. . . . If the mayor shall disapprove of any ordinance or resolution transmitted to him as aforesaid, he shall, within ten (10) days of the time of its passage by the council, return the same to the clerk with his objections in writing, and the clerk shall make report thereof to the next regular meeting of the city council; and if a majority of the council members present shall at said meeting adhere to said ordinance or resolution, notwithstanding said objections, said vote being taken by yeas and nays and spread upon the minutes, then, and not otherwise, said ordinance or resolution shall after publication thereof, if publication is required, have the force of law. If publication of said ordinance or resolution is not required, it shall take effect upon its passage over objections. . . . Anything in this section to the contrary notwithstanding, the mayor shall not have the power to veto over appointments of the council, or over any action of the council *Page 497 
relating to an investigation as provided for in section 9.03 of Article IX."
(Emphasis added.)
Article IV of Act No. 618 is entitled "Mayor," and § 4.06, entitled "Powers and duties," provides:
 "The mayor shall be the head of the administrative branch of the city government. He shall not sit with the council nor shall he have a vote in its proceedings and he shall have the power and duties herein conferred. He shall be responsible for the proper administration of all affairs of the city and, subject to the provisions of any civil service or merit system law applicable to such city and except as otherwise provided herein, he shall have power and shall be required to:
 ". . .
 "(4) Keep the council fully advised as to the financial conditions and needs of the city; prepare and submit the budget annually to the council and be responsible for its administration after its adoption; prepare and submit, as of the end of the fiscal year, a complete report on the financial and administrative activities of the city for such year.
 ". . . ."
 2. Whether Act No. 618 permits the Mayor to Veto a Budget
The minority contends that the trial court correctly ruled that Act No. 618 does not grant the mayor of the City of Montgomery the power or authority to veto a budget. On the other hand, Mayor Bright contends that he vetoed Ordinance 61-2006, which adopted the first council budget, and that § 3.15 of Act No. 618 grants the mayor of the City of Montgomery the power and authority to veto any and allordinances[3] passed by the council and submitted to the mayor by the city clerk.[4]
We must determine whether the legislature intended to grant the mayor of the City of Montgomery the power to veto an ordinance adopting a budget. Section 3.15 provides: "If the mayor shall disapprove of any ordinance . . ., he shall, within ten (10) days of the time of its passage by the council, return the same to the clerk with his objections in writing." (Emphasis added.) Mayor Bright contends that the phrase "any ordinance" in this sentence subsumes an ordinance that contains a budget. The minority contends that Act No. 618 does not use the terms "budget" and "ordinance" interchangeably and notes that Act No. 618 never refers to an ordinance that contains a budget.
Our inquiry is governed by settled principles of statutory construction:
 "`The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute. League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). In this ascertainment, we must look to the entire Act instead of isolated phrases or clauses; Opinion of the Justices, 264 Ala. 176, 85 So.2d 391 (1956).' *Page 498 
 "Darks Dairy, Inc. v. Alabama Dairy Comm'n, 367 So.2d 1378, 1380 (Ala. 1979) (emphasis added). To discern the legislative intent, the Court must first look to the language of the statute. If, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, there is no room for judicial construction. Ex parte Waddail, 827 So.2d 789, 794 (Ala. 2001). If a literal construction would produce an absurd and unjust result that is clearly inconsistent with the purpose and policy of the statute, such a construction is to be avoided. Ex parte Meeks, 682 So.2d 423 (Ala. 1996)."
City of Bessemer v. McClain, 957 So.2d 1061, 1074-75
(Ala. 2006).
The minority's contention that Act No. 618 does not grant the mayor the power to veto a budget or an ordinance adopting a budget is, for the reasons set forth below, refuted when § 3.15 is considered in light of the entire Act. See McRae v.Security Pac. Hous. Servs., Inc., 628 So.2d 429, 432
(Ala. 1993) ("Under the rules of statutory construction, we must consider the statute as a whole and must construe the statute reasonably so as to harmonize the provisions of the statute.").
 a. The Reference in § 3.15 to Ordinances of Permanent Operation
First, we note that § 3.15 expressly limits the council's authority to act on an "ordinance of permanent operation"; such an ordinance must be passed by "unanimous consent of all members of the council present." This limitation evidences legislative contemplation of ordinances of an impermanent character, such as ordinances adopting budgets, which by their nature have a limited duration and effect. Opinion of the Attorney General No. 91-180, relied upon by the trial court as support for its finding no veto power in the mayor, recognizes that a resolution or ordinance dealing with a budget is an ordinance not intended to be "of permanent operation." Op. Att'y Gen. No. 91-180 (Feb. 21, 1991). Unlike the statute addressed in the Attorney General's Opinion, which granted a mayor the power to veto only ordinances of permanentoperation, the mayor's veto power granted in Act. 618 applies to "any ordinance or resolution," notwithstanding that in a preceding sentence in the same section the legislature referred to an "ordinance of permanent operation." (Emphasis added.)
Our cases have recognized that ordinances may be of permanent operation or may have a more limited duration. See Cityof Prichard v. Moulton, 277 Ala. 231, 238, 168 So.2d 602,609 (1964) ("Ordinances or resolutions of permanent operation are those which continue in force until repealed. An ordinance providing for the creation of city offices such as a treasurer, tax collector, or clerk, is an example of an ordinance of a permanent nature. Michael v. State, 163 Ala. 425,50 So. 929 [(1909)]. In Pierce v. City of Huntsville,185 Ala. 490, 64 So. 301 [(1913)], this Court held that ordinances and resolutions relating to the calling for and acceptance of bids and fixing assessments, for paving of certain streets were not ordinances or resolutions of a permanent nature."). InMoulton, this Court concluded that proceedings involving resolutions and ordinances for a city's ordinary needs and expenses did not need to be approved by the mayor, whose veto authority was limited to ordinances and resolutions intended to be of a permanent operation. 277 Ala. at 238,168 So.2d at 609. Thus, because § 3.15 refers to "ordinances of permanent operation" we must conclude that the legislature also contemplated the existence of ordinances that deal with matters not of permanent operation, such as those dealing *Page 499 
with adoption of a budget for a given year, and contemplated that such ordinances were within the scope of the council's authority to pass ordinances.
 b. The Effect of the Absence of Direct Reference to a "Budget" in the Context of Ordinances
The minority contends that we should draw significance from the absence of the term "budget" in connection with references to ordinances because, it argues, the legislature could have chosen to use, but did not, the term "budget-ordinance." The trial court held that § 3.07 grants the council the sole power to adopt the general-fund budget for the City of Montgomery, without discussing the mayor's power to veto ordinances in § 3.15. Because §§ 3.07 and 3.15 deal with the same subject matter, the powers of the city council, we must read them in pari materia and construe them together to ascertain the meaning and intent of each section. Ex parte Weaver, 871 So.2d 820, 824 (Ala. 2003).
The conclusion that we should attach significance to the omission of any reference to the word "budget" in § 3.15 does not withstand scrutiny when § 3.15 is considered in its entirety and in light of the plain meaning of the term "ordinance." Section 3.15 uses the term "ordinance" to describe a means of "appropriating any money for any purpose."[5] (Emphasis added.) "Ordinance" is defined inBlack's Law Dictionary 1132 (8th ed. 2004) as follows:
 "An authoritative law or decree; esp., a municipal regulation. Municipal governments can pass ordinances on matters that the state government allows to be regulated at the local level. — Also termed bylaw; municipal ordinance. [Cases: Municipal Corporations 105. C.J.S. Municipal Corporations §§ 247-251.]
 "`An ordinance . . . may be purely administrative in nature, establishing offices, prescribing duties, or setting salaries; it may have to do with the routine or procedure of the governing body. Or it may be a governmental exercise of the power to control the conduct of the public — establishing rules which must be complied with, or prohibiting certain actions or conduct. In any event it is the determination of the sovereign power of the state as delegated to the municipality. It is a legislative enactment, within its sphere, as much as an act of the state legislature.' 1 Judith O'Gallagher, Municipal Ordinances § 1A.01, at 3 (2d ed. 1998)."
(Some emphasis original; some emphasis added.)
Appropriating money for various purposes through the adoption of a budget is an administrative function of the City of Montgomery. Perhaps the most compelling evidence of the reasonableness of interpreting the council's action of passing a budget as the adoption of an ordinance pursuant to the powers enumerated in § 3.15 is found in the style of the document through which the council adopted the first council budget — the very budget that Mayor Bright vetoed; it is entitled, "Ordinance 61-2006." (Emphasis added.) Moreover, if we do not harmonize §§ 3.07 and 3.15 and instead accept the minority's reasoning that every power granted to the council by § 3.07 is exempt from the veto power granted to the mayor by § 3.15, we would then have to ascribe to the legislature *Page 500 
an intent to provide the mayor with a virtually meaningless veto power. We find no basis to conclude that Act No. 618 withholds the authority to adopt a budget from the sweep of the council's power to pass ordinances in § 3.15. Therefore, we draw no significance from the absence of the term "budget" in connection with the grant of power in § 3.15 to the mayor to veto ordinances.
 c. The Effect of Express Limitations on the Mayor's Veto Power
Section 3.15 places express limitations upon the mayor's power to veto ordinances, and none of these limitations relates to ordinances adopting budgets.[6] The legislature expressly provided that the mayor lacks the power to veto appointments of the council and any actions relating to an investigation by the council but does not mention ordinances adopting budgets. Under the rule of "expressio unius est exclusio alterius," we must construe § 3.15 as excluding other subjects from which the sweep of the mayor's veto power is withheld. Champion v.McLean, 266 Ala. 103, 112, 95 So.2d 82, 91 (1957). ("According to this rule of construction, where a statute enumerates certain things on which it is to operate, the statute is to be construed as excluding from its effect all those things not expressly mentioned.").
 d. The Effect of the Limitation on the Mayor's Voting Rights in § 4.06
The trial court held that § 4.06, which provides that the mayor "shall not sit with the council nor shall he have a vote in its proceedings and he shall have the powers and duties herein conferred," supports the absence of a veto power over budgets. However, that view requires a strained reading of § 4.06, one that is inconsistent with the plain meaning of the section. A veto does not come into play until the conclusion of the proceedings by the council. The prohibition against a vote "in its proceedings" is therefore inapplicable to a veto, which occurs after an ordinance has been passed by the council. Once again, we must reasonably construe the Act in its entirety so as to harmonize its provisions. SeeMcRae, 628 So.2d at 432.
 e. The Inapplicability of Wilson v. Dawson
The trial court also relied upon Wilson v. Dawson,590 So.2d 263 (Ala. 1991), which the minority urges us to follow. InWilson, the mayor of the City of Prichard made two types of changes to the general-fund budget adopted by the city council. 590 So.2d at 264. The mayor line-item vetoed several expenditures on the budget and inserted several line-item expenditures. 590 So.2d at 264. To determine the scope of the powers of the mayor of the City of Prichard, this Court specifically examined § 11-43C-52 because the mayor-council form of government for the City of Prichard is governed by § 11-43C-1 et seq., Ala. Code 1975. 590 So.2d at 264. Section 11-43C-52 provides:
 "If the mayor shall disapprove of any expenditure line item contained in the budget transmitted to him by the council, he shall, within 10 days of the time of its passage by the council, return the same to the clerk with his objections in writing, and the clerk shall make report thereof to the next regular meeting of the city council, and if four[7] of the council members shall at the meeting adhere to said expenditure line item by *Page 501 
yeas and nays and spread upon the minutes, then said expenditure line item shall become effective."
In Wilson, this Court strictly construed § 11-43C-52 to conclude that the legislature intended to provide the mayor with the power to line-item veto expenditures in a budget, but not "the power to alter and amend the budget so as to add or change items after its adoption." 590 So.2d at 266. Therefore, this Court held that "[t]he mayor's statutory powers are not broad enough to permit a mayor to make alterations and amendments to a budget after it has been adopted by the council." 590 So.2d at 265.
The trial court applied the holding in Wilson to hold that Mayor Bright did not have the power or authority to veto the first council budget because, it reasoned, Act No. 618 does not explicitly grant Mayor Bright the power or authority to veto a budget. This reasoning assumes that the reference to "all ordinances" in § 3.15 is insufficient to deal with the council's adoption of a budget, a concept we have rejected.
 IV. Conclusion
We hold that pursuant to § 3.15 of Act No. 618, the mayor of the City of Montgomery has the power and authority to veto an ordinance adopting a budget and, therefore, that the budget approved January 2, 2007, was the proper budget for the 2007 fiscal year.[8] Accordingly, the judgment of the trial court is reversed and a judgment is rendered in favor of Mayor Bright.
REVERSED AND JUDGMENT RENDERED.
COBB, C.J., and SEE, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
[1] Section 5.10 of Act No. 618, Ala. Acts 1973, provides:
 "If for any reason the council fails to adopt the general fund budget on or before [September 20], the general fund budget of the current fiscal year shall be the general fund budget for the ensuing year, until such time as a newly revised budget shall be adopted by the council, and, until such time, shall have full force and effect to the same extent as if the same had been adopted by the council, notwithstanding anything to the contrary in this act."
[2] The last brief in this appeal was filed on September 25, 2007, the case was assigned to Justice Lyons on September 26, 2007, and four days later, on October 1, 2007, the budget for the 2008 fiscal year superseded the budget approved on January 2, 2007, for the 2007 fiscal year.
[3] Mayor Bright states that the two specifically enumerated exceptions to the mayor's power to veto an ordinance in § 3.15 are not applicable here.
[4] The minority contends that Mayor Bright's argument that Act No. 618 grants him statutory authority to veto an ordinance containing a budget is not supported with any relevant authority and, therefore, only minimally complies with Rule 28, Ala. R.App. P. However, we note that this case requires interpretation of specific provisions in a local act that this Court has not previously considered. Moreover, Mayor Bright adequately supports his argument by citation of applicable cases regarding statutory construction.
[5] Section 3.15 provides, in pertinent part: "No resolution, by-law or ordinance . . . appropriating any money for any purpose . . . shall be enacted except at a regular public meeting of said council or an adjournment thereof."
[6] The minority does not contend that any section of Act No. 618 explicitly prohibits the mayor of the City of Montgomery from vetoing a budget or an ordinance containing a budget.
[7] At the time Wilson was decided, § 11-43C-52
required the adherence of five members of the council.
[8] We need not address Mayor Bright's argument that the council adopted Ordinance 61-2006 in violation § 5.09 of Act No. 618.