[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14804
_____

D.C. Docket No. 2:10-cv-01270-MHH


KENNETH CAMP,
MICHAEL TODD MCCARVER,
PATRICK SMITH,
STEPHEN KIEL,
RANDAL BEARDEN,

Plaintiffs - Appellees,

versus

CITY OF PELHAM,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 27, 2015)

Before ED CARNES, Chief Judge, JILL PRYOR and HIGGINBOTHAM,[*] Circuit Judges.

PER CURIAM:

The City of Pelham (the "City") appeals the district court's orders (1) granting partial summary judgment to current and retired City firefighters (the "firefighters") on their claim that the City incorrectly calculated their sick and vacation leave under the City's civil service law, Ala. Act 1989-189, 1989 Reg. Sess. (Ala. 1989), *amended by* Ala. Act 2015-416, 2015 Reg. Sess. (Ala. 2015) (the "Civil Service Law"), and (2) ordering the City to convert the firefighters' unused sick leave to creditable service upon retirement using an eight-hour work day. In this appeal, we examine the Civil Service Law regarding the proper accrual rate of sick and vacation leave for firefighters, who work more hours than employees who work a standard 40-hour week ("standard employees"). After careful review, and with the benefit of oral argument, we affirm the district court's first order granting partial summary judgment to the firefighters on their claim regarding sick and vacation leave, vacate the district court's second order regarding the proper conversion rate for unused sick leave upon retirement, and remand for further proceedings.

---

[*] Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit, sitting by designation.

I.

The Civil Service Law, which was enacted by the state legislature, governs City employees' pay and terms of employment.[1]  For standard employees, the Civil Service Law sets forth the accrual rates for vacation and sick leave.  Standard employees accrue one day of sick leave each month and one to two days of vacation leave each month, depending on their length of service with the City.[2]  City of Pelham Civil Service Law §§ 7.11-.12, 7.18, Doc. No. 28-2.[3]  All employees receive eight hours of overtime pay for work scheduled on a holiday or when a holiday falls on a regularly scheduled day off.  *Id.* § 7.24(d)(2).

City firefighters do not work a standard 40-hour work week; instead, they work 24-hour shifts, and each shift is followed by 48-hours off.  In a 28-day period, a firefighter is scheduled to work 216 hours,[4] or nine 24-hour days, while a

---

[1] The Alabama legislature passed the Civil Service Law in 1988 and amended it in 2001 and 2015.  *See* H.B. 683, 2015-416, 2015 Leg., Reg. Sess. (Ala. 2015).  The Civil Service Law applies only to the "City of Pelham in Shelby County, to establish a civil service system."  Ala. Act. 198-189.

[2] Employees who have served from zero to 12 years accrue one vacation day per month of service, employees who have served from 12 to 25 years accrue one and a half vacation days per month of service, and employees who have served more than 25 years accrue two vacation days per month of service.  Civil Service Law § 7.12.

[3] Citations to "Doc." herein refer to docket entries in the district court record in this case.

[4] For scheduling purposes, the firefighters are split into three groups, the A, B, and C shifts.  The A shift works the first day, while the B and C shifts are off.  The B shift works the second day, while the A and C shifts are off.  The C shift works the third day, while the A and B shifts are off.  The cycle repeats so that during a 28-day period, two of the groups of firefighters

3

standard employee is scheduled to work 160 hours (40 hours a week). The Civil Service Law dictates that City employees — like firefighters — who have a pay base that "is other than the standard work week . . . shall earn and use [sick or vacation] time in a comparable manner as set by executive order of the [Human Resources] Director."[5]  *Id.* §§ 7.11, 7.17.

Although the Civil Service Law has required, since 1989, that the City issue an executive order setting forth the comparable manner in which firefighters would accrue sick leave and vacation time, the City did not do so until February 2009 (the "2009 Executive Order"). Both before and after the 2009 Executive Order, from 1992 until 2012, the City interpreted the requirement that firefighters be treated comparably to mean that they should earn sick and vacation time "at the same rate" as standard employees.[6]  In other words, both standard employees and firefighters earned one eight-hour day of sick time each month and one to two days of vacation time each month, depending on the length of their service.

The 2009 Executive Order did not change the accrual of sick and vacation time for firefighters. It stated that firefighters would be compensated "by the

---

will work nine 24-hour shifts, or 216 hours. The other group will work 10 24-hour shifts in 28 days, but they will be given a "Kelly Day," a scheduled day off that is not counted as hours worked for Fair Labor Standards Act purposes.

[5] The Civil Service Law defines the "Director" as "[t]he Human Resources Director appointed by the Mayor with Council approval." Civil Service Law at 7.

'**Kelly Day**' that they receive when they are over the maximum allowed hours."
Aff. of Jerry W. Nolan ¶ 11, Doc. No. 32-1. A "Kelly Day" is not compensation; it is a scheduled day off that does not count towards hours worked for Fair Labor Standards Act ("FLSA") purposes and ensures a firefighter does not exceed FLSA hour thresholds for overtime hours. The Director, Jerry Nolan, acknowledged that this was the practice in place prior to the 2009 Executive Order, which effectively did not change anything.

All City employees, including the firefighters, are covered by a pension plan with benefits managed by the Retirement Systems of Alabama (the "RSA"). When state and local employees retire, Alabama law allows those retiring in good standing to convert their unused sick leave into service time, thereby increasing their pension benefits. *See* Ala. Code § 36-26-36.1 (permitting a plan member "to convert unused sick leave into membership service for purposes of service retirement"). The RSA defers to the City about how to convert an employee's unused sick leave into service time for purposes of calculating retirement benefits. During the period in which the firefighters accrued sick leave at the same rate as standard employees, the City converted all employees' unused sick leave by

---

[6] The Director, Jerry Nolan, stated that at all relevant times "comparable" meant that "all employees should earn sick and vacation time at the same rate." Aff. of Jerry W. Nolan ¶ 10, Doc. No. 32-1.

dividing the unused hours by eight, which represents a standard employee's work day.

This lawsuit was filed as a class action alleging that the City's scheduling of firefighters' work violated the FLSA and that the City breached the Civil Service Law by failing to award firefighters sick, vacation, and holiday time in a comparable manner to standard employees. In their complaint, the firefighters sought both damages and injunctive relief.

In March 2012, the magistrate judge filed reports recommending that the district court certify an FLSA collective action and a Federal Rule of Civil Procedure 23 class action pertaining to the state law claims. The City objected to the magistrate judge's reports and recommendations. While the objections were pending, on January 1, 2013 the Director issued a new executive order changing the City's policy for calculating firefighters' sick and vacation leave (the "2013 Executive Order"). Under the 2013 Executive Order, firefighters would accrue 10.6 hours of sick time per month and 10.6 to 21.2 hours of vacation time per month depending on their length of service. Under this new policy, firefighters accrued 1.325 times more leave per month than standard employees, which is roughly equivalent to the 33 percent more hours that the firefighters worked each month. The City also changed how it calculated the number of days of creditable service a firefighter had accrued upon retirement based on unused sick time. The

6

City began converting firefighter retirees' sick time into days by dividing the number of unused sick hours by 10.6.  The City continued to divide standard employees' unused sick hours by eight.

The district court then adopted the magistrate judge's reports and recommendations and conditionally certified a collective action under the FLSA and a class under Rule 23 based on the state law claims.  With regard to the claim regarding vacation and sick leave, the district court granted the firefighters partial summary judgment, holding that the City violated the Civil Service Law by failing to award them sick and vacation leave in a comparable manner to that of standard employees.[7]  The parties settled the FLSA claim.[8]  They also settled the firefighters' claim that the City violated the Civil Service Law by improperly awarding holiday pay to the firefighters.

The district court was then left with the firefighters' claims that the City had failed to follow its Civil Service Law because it did not award firefighters sick leave "in a comparable manner" to standard employees and that it should have

---

[7] Following the district court's summary judgment ruling, the parties, without agreeing upon liability, stipulated that the opt-out class should recover $326,000 in damages for the vacation accrual claims.

[8] The district court had federal question jurisdiction based on the FLSA claim, and it exercised supplemental jurisdiction over the state law claims.  28 U.S.C. § 1367(a).  When the FLSA claim settled, and only the state law claims remained, the district court could have declined to exercise supplemental jurisdiction, *see* 28 U.S.C. § 1367(c)(3), but it had discretion to and did retain jurisdiction.  *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1568 (11th Cir. 1994).

used an eight-hour rate to convert unused sick leave to days of service credit for purposes of calculating retired firefighters' pension benefits.  The district court ordered the City to credit currently employed class members the 6,762 additional sick leave hours calculated by their damages expert and to pay damages to the retired class members equal to the pension benefits they would have received using an eight-hour conversion rate for unused sick leave.[9]  This appeal followed.

## II.

"We review *de novo* the district court's partial grant of summary judgment, and apply the same legal standards as the district court and view all facts and reasonable inferences in the light most favorable to the non-moving party." *Sunbeam Tele. Corp. v. Nielsen Media Res., Inc.*, 711 F.3d 1264, 1270 (11th Cir. 2013).  We review *de novo* the district court's conclusion of law that the firefighters' unused sick leave must be converted to creditable service upon retirement using an eight-hour conversion rate.  *See Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1216 (11th Cir. 2000).

---

[9] The district court's order also denied the firefighters' request for an injunction to require the City to continue to award sick and vacation time as established in the January 2013 Executive Order.  The firefighters did not appeal that part of the order.

III.

The Civil Service Law requires that firefighters, as "employees whose basis of pay is other than the standard work week, shall earn and use [vacation or sick] time in a comparable manner as set by executive order of the Director."  Civil Service Law §§ 7.11 (vacation time), 7.17 (sick time).  Standard employees earn vacation and sick leave in terms of days, earning one to two days of vacation leave per month depending on the length of their service, *id.* § 7.12, and one day of sick leave per month, *id.* § 7.18.  The Civil Service Law does not define a day, but under the City's practice during the relevant period it considered a standard employee's day to be eight hours.  The City argues that the district court wrongly interpreted "comparable" to mean "directly proportional" to the hours standard employees worked and that the Director had the discretion to determine that "all employees should earn sick and vacation time at the same rate."  Aff. of J. Nolan ¶ 10, Doc. No 32-1.

We look to Alabama's established rules of statutory construction to interpret the City's Civil Service Law.  "The fundamental rule of statutory construction . . . is to ascertain and effectuate the legislative intent as expressed in the statute." *Bright v. Calhoun*, 988 So. 2d 492, 497 (Ala. 2008) (internal quotation omitted).  Doing so requires looking at the entire act, rather than isolated phrases or clauses. *Id.*  "If, giving the statutory language its plain and ordinary meaning, we conclude

9

that the language is unambiguous, there is no room for judicial construction."

*Id.* at 498.  "When a term is not defined in a statute, the commonly accepted

definition of the term should be applied."  *State Superintendent of Educ. v. Ala.

Educ. Ass'n*, 144 So. 3d 265, 272 (Ala. 2013) (internal citations omitted).  "There

is a presumption that every word, sentence, or provision of a statute was intended

for some useful purpose, has some force and effect, and that some effect is to be

given to each, and also that no superfluous words or provisions were used."  *Id.* at

273 (internal quotations omitted).  The "reason and necessity for the statute and the

purpose sought to be obtained by enacting the statute" may also be relevant.  *Pace

v. Armstrong World Indus., Inc.*, 578 So. 2d 281, 283 (Ala. 1991).

Because the Civil Service Law does not define the term "comparable,"

Alabama rules of statutory interpretation require us to apply the term's "commonly

accepted definition."  *Ala. Educ. Ass'n*, 144 So. 3d at 272 (internal quotation marks

omitted).  The Alabama Supreme Court has previously interpreted the term

"comparable," used in a similar law governing the compensation of law

enforcement personnel, to mean "[e]quivalent, similar."  *Shelby Cnty. Comm'n v.

Smith*, 372 So. 2d 1092, 1096 (Ala. 1979) (quoting *Webster's Third New

International Dictionary*);[10] *see Webster's Third International Dictionary* 461

---

[10] In *Smith*, the Alabama Supreme Court interpreted local acts requiring that deputies' salaries "shall be comparable to" the salaries of Alabama State Highway Patrol state troopers. 372 So. 2d at 1096.  When the legislature increased state trooper salaries by $115, the deputies

(2002) (defining comparable as "suitable for matching, coordinating, or contrasting: equivalent, similar").

The City argues that we should interpret "comparable" to mean that firefighters should accrue sick and vacation leave in a manner or at a rate that would have them working substantially more hours to earn the same amount of sick and vacation leave that standard employees earn for working substantially fewer hours.  But requiring substantially more is not equivalent or similar to requiring substantially less.  A firefighter who works 216 hours per month to earn the same sick and vacation leave as a standard employee earns for 160 hours per month is not earning leave in a comparable manner or at a similar rate.  Put differently, the eight hours of sick leave that a standard employee accrues per 160-hour month of service represents 5% of the hours he works per month.  In contrast, eight hours of leave per 216-hour month of service for a firefighter represents just 3.7% of the hours he works per month.  The correct interpretation of "comparable" is that the firefighters must accrue sick and vacation leave in a manner that reflects the amount they work in comparison to standard employees.  And the amount of work a person does depends on the hours he works, not the number of months in which that person did any work.

_____

sought a similar increase and received a $30 raise. *Id.*  While recognizing that a discrepancy of a few dollars might not make a difference, the Alabama Supreme Court decided that an $85

11

What's more, the City's reading renders the phrase "comparable manner" superfluous. Sections 7.11 and 7.17 of the Civil Service Law require leave to accrue in a "comparable manner." If "comparable manner" means that firefighters receive the exact same amount of leave, regardless of how many more hours they work, these provisions would be unnecessary. There would be no need to differentiate between standard employees and employees, like firefighters, who work different schedules. Under Alabama rules of statutory interpretation, we must presume that the legislature would not have included this superfluous language if the legislature intended for all employees to receive the same amount of leave despite hours worked. *See Ala. Educ. Ass'n*, 445 So. 3d at 273.

Looking, as we must, to the Civil Service Law as a whole, its treatment of holiday time further indicates the Alabama legislature's intent to award firefighters sick and vacation leave at a rate commensurate with the hours they work. The Civil Service Law provides that an employee is awarded eight hours of overtime for work on a holiday when a holiday falls on a regularly scheduled day off. Civil Service Law § 7.24(d)(2). In contrast, the Civil Service Law specifies that vacation and sick leave accrues in days, without reference to the number of hours. *See, e.g.*, *id.* § 7.18 ("Sick leave shall be earned at the rate of one (1) work day for each month of service."). Because we must presume that the legislature intended

---

discrepancy in pay created compensation that was not "equivalent or similar." *Id.*

12

this difference, we conclude that a day of sick and vacation leave is not required to be eight hours for every employee, without regard to her work schedule. *See Ala. Educ. Ass'n*, 144 So. 3d at 273.[11]

We reject the City's argument that the Director was within his discretion to set leave accrual at the exact same rate for firefighters and standard employees. "The decision of an administrative agency will be affirmed unless the appellant can prove that the agency acted in an arbitrary and capricious manner *or failed to comply with the applicable law*." *Ex parte City of Dothan Pers. Bd.*, 791 So. 2d 353, 356 (Ala. 2000) (emphasis added). Assuming the Director's actions amounted to the decision of an administrative agency, the Director failed to comply with the applicable law because he did not have the discretion to set incomparable rates.[12]

---

[11] The stated purpose of the Civil Service Law also supports this interpretation. *See Pace*, 578 So. 2d 283 (looking to the "purpose sought to be obtained by enacting the statute"). The "Forward" to the Civil Service Law provides that its rules "seek to recruit, retain, and develop those persons best qualified to perform service in the public interest." Civil Service Law at 1. Alabama civil service systems "were created by the Legislature to achieve the goals of stability, continuity, and security in the various job classifications within a municipality." *Hall v. City of Tuscaloosa*, 421 So. 2d 1244, 1249 (Ala. 1982). In surrounding counties, including Jefferson County, firefighters accrue sick and vacation leave at a higher rate than standard employees do. A lower accrual rate works against the stability and continuity of employment among firefighters because the City may have difficulty recruiting and retaining firefighters who could work for a nearby city that offers better benefits, *i.e.*, leave commensurate with their hours.

[12] We also reject the City's argument that the district court's decision threatens the federalism and comity principles articulated in *Younger v. Harris*, 401 U.S. 37 (1971), and *Rizzo v. Goode*, 423 U.S. 362 (1976). *Younger* and *Rizzo* addressed a federal court's power of injunction over state court actions. An injunction, which the district court declined to order, is not at issue here.

13

The City violated the Civil Service Law by failing to set a comparable rate, both before and after the issuance of the 2009 Executive Order, because at all times during the relevant period the Director set sick and vacation leave accrual for firefighters and standard employees at the exact same rate, despite the fact that the firefighters worked approximately one third more hours.[13]  The district court correctly held that the City violated the Civil Service Law by failing to calculate the firefighters' sick and vacation leave in a manner comparable to that of standard employees.

## IV.

We turn next to the firefighters claim concerning the rate at which the City converts sick leave into creditable service upon retirement.  Under Alabama's Employees' Retirement System (the "ERS"), an employee's pension benefit is based on the employee's average final salary as defined by the ERS and his years and months of creditable service.  Upon retirement, an employee may extend his

---

[13] We do not, however, necessarily require "directly proportional" amounts of leave.  But that is a question for another day.  Similar to *Smith*, this is not a case in which the parties quibble over a difference of a few dollars.  The district court acknowledged that it would defer to the Director if this were simply a dispute over a rate for firefighters of 1.3 versus 1.4 times the accrual of leave for standard employees.  But because the dispute here is of a rate of 1 versus a rate of 1.325, we cannot simply defer to the Director.

14

length of creditable service with unused sick leave to increase his pension benefits. *See* Ala. Code § 36-26-36.1.[14]

Although the ERS provides a table for converting "accumulated sick leave days to months of service," the ERS does not say how many hours constitute a day. *See* Employee Retirement System Handbook at 18, Doc. No. 145-1. Until the 2013 Executive Order went into effect on January 1, 2013, the City converted all employees' unused sick leave into days for pension calculation purposes by dividing the number of unused sick leave hours by eight. After January 1, 2013, when the City began crediting firefighters with 10.6 hours of sick leave per month of service, the City began dividing a retiring firefighter's unused hours by 10.6.

The City argues that if a firefighter's "day" of sick leave amounts to 10.6 hours, then a firefighter's "day" for pension conversion purposes must also be 10.6 hours. We agree. The Civil Service Law provides that "[s]ick leave shall be earned at the rate of one (1) work day for each month of service" and that firefighters shall "*earn and use* sick leave in a comparable manner" to standard employees. Civil Service Law §§ 7.18, 7.19 (emphasis added). Again, it does not say "the same" manner, which would be eight hours. We acknowledge that the City's current interpretation of a firefighter's "day" for purposes of § 7.18 is a legal

---

[14] The ERS permits only an employee's sick leave, and not vacation leave, to be converted to creditable service.

fiction because a firefighter's "day" actually is 24 hours. But 10.6 hours represents the "day" of sick leave a firefighter earns for every month of service.

The district court reasoned that the City must use an eight-hour conversion rate for firefighters because using a 10.6-hour conversion rate results in firefighters accruing fewer days, and therefore months, to add to their creditable service, despite working more hours. The court's interpretation would have firefighters earn sick leave at a rate of 10.6 hours per month but accumulate creditable service days as if they only received eight hours of sick leave per month. For example, assume a firefighter worked for twelve months and did not use any sick time. The firefighter, earning 10.6 hours of sick leave per month, would have 127.2 hours of unused sick leave, or 12 10.6-hour "days." If the City used a 10.6-hour conversion rate, the firefighter would have 12 days to add to her creditable service.[15] But if the City used an eight-hour conversion rate, the firefighter would have 15.9 days to add to her creditable service.[16] To use an eight-hour conversion rate while the firefighters earn sick leave "days" in 10.6 hour units would mean that the firefighters earn — but do not use — sick leave in a comparable manner. *Id.* § 7.17 ("employees shall . . . earn and *use* sick time in a comparable manner") (emphasis added). Instead, an eight-hour conversion rate would credit firefighters

---

[15] $127.2 \div 10.6 = 12$.

[16] $127.2 \div 8 = 15.9$.

with additional days they did not work and thus artificially increase the firefighters' pension benefits.

The district court's conclusion would distort the fact that the 10.6-hour unit represents one month of service a firefighter worked and did not take sick leave. In the example above, using a 10.6-hour unit resulted in 12 days the firefighter could add to her creditable service, which correctly represents the fact that she worked for 12 months without taking any sick time and therefore accrued 12 "days" of sick leave. But applying an eight-hour unit resulted in 3.9 extra days of creditable service. Using an eight-hour rate would falsely indicate that the firefighter worked 3.9 months more than she actually did, because 12 months should equal 12 "days" of sick leave. This outcome would be inconsistent with Alabama law providing that pension benefits are intended to reflect the years that an employee worked, not the hours. *See* Ala. Code § 36-27-16(a)(2)(c) (calculating an employee's pension based on "the member's average final compensation multiplied by the number of years of his or her creditable service").

We are unpersuaded by the firefighters' argument that using a 10.6 hour day devalues the firefighters' sick leave. The firefighters may still use their comparable sick leave for its intended purpose: to take off time when they are sick. But, to comply with the Civil Service Law's requirement that firefighters earn and use sick leave in a comparable manner to standard employees for the calculation of

17

a retiree's pension benefits, sick leave must be converted to days using the unit in which it is earned: 10.6 hours equals one day. [17]

## V.

We affirm the district court's order regarding the calculation of sick and vacation leave and vacate the district court's order regarding the calculation of pension benefits.  We remand to the district court for further proceedings consistent with this opinion.

**AFFIRMED in part, VACATED in part, and REMANDED in part.**

---

[17] We note that our conclusion is consistent with testimony from Fire Chief Danny Ray, who admitted that the additional time credited to firefighters to place them on a 10.6-hour scale "was not intended" to provide firefighters with more sick time for the purpose of calculating a retiree's months of service for pension benefit purposes.  Ray Dep. at 33:10-16, 35:1-9, Doc. No. 109-3.  While the "additional time can be used when actually taking sick and vacation time," firefighters cannot use the additional time to "provide any increased benefit upon retirement." *Id.* at 38:11-22.