Melanie R. Waddail, the mother of William Adam Waddail, a deceased minor, appeals from a summary judgment entered in favor of Glenn A. Roberts, D.O., in this medical-malpractice case. This case was transferred to this court by the supreme court, pursuant to §12-2-7(6), Ala. Code 1975.
 Appellate court review of a summary judgment is de novo: "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala.R.Civ.P. When a movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359
(Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
On December 17, 1995, Melanie brought 12-year-old Adam to the emergency room at Elba General Hospital. Adam, a diabetic, was nonresponsive with an elevated blood-sugar level after experiencing nausea and vomiting. Dr. Roberts is a doctor of osteopathy, who had a contract to provide emergency-room services at Elba General. Roberts consulted with Dr. John Stone, an endocrinologist in Dothan, who had been treating Adam. Adam was in diabetic ketoacidosis. Ketoacidosis is a condition whereby an insulin-dependent diabetic goes into an acidotic state and can no longer use glucose for energy.
Roberts and Stone decided that Adam should be transferred to Southeast Alabama *Page 786 
Medical Center in Dothan, because Elba General did not have the facilities to provide the specialized care Adam needed. At the Medical Center, Adam suffered respiratory arrest and stopped breathing. After two brain scans showed no neurological activity, Adam was declared dead on December 19, 1995.
On October 24, 1997, Melanie sued Roberts, alleging he had wrongfully caused Adam's death; she sued pursuant to § 6-5-481 et seq., the Alabama Medical Liability Act ("AMLA").[1] Specifically, Melanie claimed that Roberts had failed to properly stabilize Adam before transferring him. Roberts moved for a summary judgment, arguing that Melanie had not presented substantial evidence of proximate cause, because an autopsy was not performed on Adam. Roberts also argued that Melanie had not presented competent expert testimony to establish the applicable standard of care. The trial court held that Melanie had presented competent expert testimony, but that she had failed to present substantial evidence of proximate cause.
In opposition to Roberts's motion for a summary judgment, Melanie presented the testimony of Dr. Wayne Longmore, a medical doctor certified by the American College of Emergency Medicine. Roberts is a doctor of osteopathy and is certified by the American Osteopathic Board of Family Physicians. At the time of his alleged breach of the standard of care, Roberts was providing emergency-room services at Elba General.
Section 6-5-548(a) provides:
 "In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice. . . ."
Section 6-5-548(b) applies when the defendant health-care provider is not board certified in a specialty, is not trained and experienced in a specialty, or does not hold himself out to be a specialist. Section6-5-548(b) defines a "similarly situated health care provider" as one (1) who is licensed by the appropriate regulatory board or agency of this or some other state, (2) who is trained and experienced in the same discipline or school of practice, and (3) who has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.
Section 6-5-548(c) applies when a health-care provider is board certified as a specialist, is trained and experienced in that specialty, or holds himself out to be a specialist. That subsection, as it read at the time of the alleged breach of the standard of care, defined such a "similarly situated health care provider" as one who:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
 "(2) Is trained and experienced in the same specialty; and
 "(3) Is certified by an appropriate American board in the same specialty; and
 "(4) Has practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred." *Page 787 
In Medlin v. Crosby, 583 So.2d 1290 (Ala. 1991), the defendant was board certified in family medicine and had been practicing as a full-time emergency-room physician. The expert called to testify on the plaintiff's behalf was certified in internal medicine. He also had practiced and taught emergency medicine. The trial court held that the plaintiff's expert did not meet the qualifications of § 6-5-548(c) of a "similarly situated health care provider," because the expert was not certified in the same specialty as the defendant, i.e., family medicine.
Our supreme court in Medlin held that the trial court should first determine what standard of care the defendant was alleged to have breached and that in Medlin the question was whether the defendant had failed to take an adequate history of the plaintiff's complaints when she was admitted into the emergency room and whether the defendant had failed to adequately examine the plaintiff before releasing her. The court held that the standard of care to be applied was that of a health-care provider practicing emergency medicine. Second, the Medlin court held that the trial court should determine whether the defendant health-care provider is a specialist in the discipline or school of practice governed by the standard that the court has previously determined is alleged to have been breached. The court determined in Medlin that, under §6-5-548(b), the defendant was a nonspecialist in the field of emergency medicine, because he did not hold himself out as a specialist. Third, the court must determine whether the proffered expert witness qualifies as a similarly situated health-care provider. In Medlin, the court held that the proffered expert was qualified to testify as a similarly situated health-care provider, because he was also, under § 6-5-548(b), a nonspecialist in the field of emergency medicine.
Similarly, in Olsen v. Rich, 657 So.2d 875 (Ala. 1995), our supreme court held that it was proper for a doctor who was not a board-certified cardiologist to testify regarding an alleged breach of the standard of care committed by a certified cardiologist; the doctor testified regarding the standard of care of a health-care provider administering medications intravenously during a medical procedure. The proffered expert, a vascular, cardiac, pulmonary, and esophageal surgeon, was qualified to testify as to the proper administration of intravenous medications, because his experience included extensive involvement with the administration of intravenous drugs. Therefore, he could testify in a medical-malpractice case against a doctor who was alleged to have improperly administered drugs, even if he did not possess the same certifications as the defendant cardiologist.
After Medlin and Olsen were decided, the Legislature amended the AMLA. Section 6-5-548(e), as amended, now provides:
 "The purpose of this section is to establish a relative standard of care for health care providers. A health care provider may testify as an expert witness in any action for injury or damages against another health care provider based on a breach of the standard of care only if he or she is a `similarly situated health care provider' as defined above. It is the intent of the Legislature that in the event the defendant health care provider is certified by an appropriate American board or in a particular specialty and is practicing that specialty at the time of the alleged breach of the standard of care, a health care provider may testify as an expert witness with respect to an alleged breach of the standard of care in any action for injury, damages, or wrongful death against another health care provider *Page 788 
 only if he or she is certified by the same American Board in the same specialty."
In Johnson v. Price, 743 So.2d 436 (Ala. 1999), our supreme court held that under the newly amended § 6-5-548(e), a portion of the Alabama Medical Liability Act, a proffered expert testifying in a medical-malpractice case must be certified by the same board as the defendant health-care provider. In Johnson, the defendant, who was a doctor of osteopathy and who was certified by the American Osteopathic Board of Surgery, was alleged to have been negligent in performing surgery on the plaintiffs' relative. In support of their case, the plaintiffs presented the testimony of a medical doctor, who was certified by the American Board of Surgery. Our supreme court held that the new amendment sets out a clear new standard for expert testimony by a health-care provider and that the intent of the Legislature in adding the phrase "only if he or she is certified by the same American board in the same specialty" was to allow the court to consider only the testimony of another health-care provider certified by the same organization that certified the defendant health-care provider. The court held that the medical doctor certified by the American Board of Surgery could not testify as to the standard of care to which a doctor of osteopathy certified by the American Osteopathic Board of Surgery is to be held.
The court in Johnson stated:
 "The fact that [the certifying boards] may have the same purpose, that they may certify providers for the same procedures, or that they may require the same qualifications would be irrelevant. Section 6-5-548(e) plainly states that if the two providers are not certified by the same organization, then one cannot testify as to the standard of care applicable to the other. All questions of propriety, wisdom, necessity, utility, and expediency of legislation are exclusively for the Legislature and are questions with which this Court has no concern. This principle is embraced within the simple statement that the only question for this Court to decide is one of legislative power."
743 So.2d at 438.
In the present case, the allegations regarding breach of the proper standard of care were that Roberts, while acting in the emergency room, had failed to properly stabilize Adam before transferring him to the hospital in Dothan and that Roberts had prematurely transferred Adam; and the plaintiff alleged that the failure to properly stabilize Adam had caused his death. Therefore, the medical negligence alleged in this case would have occurred during the practice of emergency medicine. FollowingMedlin, we conclude that both Roberts and Longmore were nonspecialists practicing in the field of emergency medicine. However, because Roberts and Longmore were certified by different boards, Longmore cannot testify as to the standard of care to which Roberts is to be held, under the authority of Johnson.
We will affirm a summary judgment if it was properly entered, even if the trial court gave a wrong reason for entering it. McAlpin v. City ofDecatur, 628 So.2d 611 (Ala. 1993). Accordingly, we affirm the summary judgment in favor of Roberts.
AFFIRMED.
ROBERTSON, P.J., and MONROE and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in the result.
[1] Melanie also sued Elba General. The trial court granted Elba General's summary judgment motion and entered a judgment for that defendant. Melanie did not appeal from that summary judgment. *Page 789