On December 17, 1995, Melanie R. Waddail ("Melanie") brought her 12-year-old son, William Adam Waddail ("Adam"), to the emergency room at Elba General Hospital because he was having complications with his diabetes. Dr. Glenn A. Roberts, a doctor of osteopathy, who was the physician on duty in the emergency room when Melanie and Adam arrived at the hospital, treated Adam. After evaluating Adam's condition, Dr. Roberts prepared Adam to be transferred to Alabama Medical Center, a facility that had the appropriate equipment to treat Adam. Two hours after he was admitted to Elba General Hospital Adam was transferred via ambulance to the Medical Center. Adam suffered respiratory arrest at the Medical Center, stopped breathing, and died on December 19, 1995.
Melanie filed a medical-malpractice action against Dr. Roberts, pursuant to Ala. Code 1975, § 6-5-481 et seq., the Alabama Medical Liability Act ("the Act"). She alleged in her complaint that Dr. Roberts had wrongfully caused Adam's death by failing to properly stabilize him before transferring him to the Medical Center. Dr. Roberts moved for a summary judgment, arguing that Melanie had not presented substantial evidence of proximate *Page 791 
cause (because no autopsy had been performed on Adam) and that she had not presented competent expert testimony to establish the applicable standard of care. Melanie opposed the motion, offering the testimony of Dr. Wayne Longmore to prove the appropriate standard of care. After conducting a hearing, the trial court held that although Melanie had presented competent expert testimony, she had not presented substantial evidence of proximate cause. The trial court granted Dr. Roberts's motion for summary judgment.
Melanie appealed to this Court, and we transferred the case to the Court of Civil Appeals, pursuant to Ala. Code 1975, § 12-2-7(6). The Court of Civil Appeals affirmed, on grounds other than those on which the trial court had relied. Waddail v. Roberts, 827 So.2d 784 (Ala.Civ.App. 2000). Relying on § 6-5-548(e), the Court of Civil Appeals held that Dr. Longmore was not qualified to testify about the standard of care to which Dr. Roberts is to be held, because Dr. Roberts and Dr. Longmore are certified by different medical boards. Although Melanie, in her brief on appeal to the Court of Civil Appeals, challenged the trial court's holding regarding proximate cause, the Court of Civil Appeals did not address this issue in its opinion. We granted Melanie's petition for certiorari review; we reverse and remand.
For a full recitation of the facts and the procedural history of this case, see the opinion of the Court of Civil Appeals.
 I. Standard of Review
The standard of appellate review applicable to a ruling on a motion for summary judgment is clear:
 "When reviewing a ruling on a motion for a summary judgment, this Court applies the same standard that the trial court used `in determining whether the evidence before the court made out a genuine issue of material fact.' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a ruling on a motion for a summary judgment, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Renfro v. Georgia Power Co., 604 So.2d 408, 411 (Ala. 1992)."
City of Orange Beach v. Duggan, 788 So.2d 146, 149 (Ala. 2000).
 II. Relevant Statutes
Section 6-5-548, a part of the Alabama Medical Liability Act, explains the plaintiff's burden of proof in a tort action against a health-care provider. Subsection (a) of that statute reads:
 "In any action for injury or damages or wrongful death, whether in contract or in tort, against a heath care provider for breach of the standard of care, the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers *Page 792 
 in the same general line of practice ordinarily have and exercise in a like case."
(Emphasis added.)
As the Court of Civil Appeals explained in its opinion, § 6-5-548(b) applies to defendant health-care providers who are not specialists. According to subsection (b), a health-care provider is not a specialist if he or she is "not certified by an appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself or herself out as a specialist." A "similarly situated health care provider," under subsection (b), is one who (1) is licensed by the appropriate regulatory board or agency of this or some other state; (2) is trained and experienced in the same discipline or school of practice; and (3) has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.
Section 6-5-548(c) applies to defendant health-care providers who are "specialists." According to subsection (c), a "specialist" is one who is "certified by an appropriate American board as a specialist, is trained and experienced in a medical speciality, and holds himself or herself out as a specialist." A "similarly situated health care provider" under subsection (c) is one who (1) "[i]s licensed by the appropriate regulatory board or agency of this or some other state"; (2) "[i]s trained and experienced in the same specialty"; (3) "[i]s certified by an appropriate American board in the same specialty"; and (4) "[h]as practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred."
Section 6-5-548(e) explains the legislative intent behind §6-5-548:
 "The purpose of this section is to establish a relative standard of care for health care providers. A health care provider may testify as an expert witness in any action for injury or damages against another health care provider based on a breach of the standard of care only if he or she is a `similarly situated health care provider' as defined above. It is the intent of the Legislature that in the event the defendant health care provider is certified by an appropriate American board or in a particular specialty and is practicing that specialty at the time of the alleged breach of the standard of care, a health care provider may testify as an expert witness with respect to an alleged breach of the standard of care in any action for injury, damages, or wrongful death against another health care provider only if he or she is certified by the same American board in the same specialty."
(Emphasis added.)[1]
The Court of Civil Appeals relied on the text of subsection (e) emphasized here to support its conclusion that Dr. Longmore cannot testify against Dr. Roberts because the doctors are not certified by the same American board. The record indicates that Dr. Roberts, who is a doctor of osteopathy, is certified by the American Osteopathic Board of Family Physicians, while Dr. Longmore, who is a medical doctor, is *Page 793 
certified by the American College of Emergency Medicine.
 III. Analysis
In Medlin v. Crosby, 583 So.2d 1290 (Ala. 1991), this Court established a three-step test for determining whether an expert is qualified to testify in a case brought under the Act. A court must determine (1) the standard of care the plaintiff alleges the defendant breached; (2) whether the defendant who is alleged to have breached the standard of care is a specialist in the area of care in which the breach is alleged to have occurred; and (3) whether the expert is qualified under the criteria set out in the relevant statute. 583 So.2d at 1293.
 A. What is the standard of care in this case?
In this case, the standard of care allegedly breached is the standard of care that a doctor, practicing emergency medicine, would exercise in stabilizing a diabetic patient before transporting that patient to another facility.
 B. Is Dr. Roberts a "specialist"?
This Court concludes that Dr. Roberts is not a "specialist". As previously stated, § 6-5-548(c) defines a "specialist" as one who is board-certified in a specialty, who is trained and experienced in a medical specialty, and who holds himself or herself out as a specialist. In Medlin v. Crosby, 583 So.2d 1290 (Ala. 1991), this Court applied a former version of § 6-5-548(c) that defined a "specialist" as one who "[i]s certified by an appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist." 583 So.2d at 1292-93; Ala. Code 1975, § 6-5-548(c) (amended 1996) (emphasis added). An amendment to the statute, effective on May 17, 1996, substituted "and" for "or", thereby requiring a defendant health-care provider to satisfy all criteria in order to qualify as a "specialist" under the statute. The amended statute applies to this case, because Melanie filed this action on October 24, 1997, after the effective date of the amendment. (See note 1.) Thus, Dr. Roberts must meet all three qualifications to qualify as a "specialist" under this subsection.
Dr. Roberts is board-certified in family medicine; however, the alleged breach of the standard of care occurred while he was practicing emergency medicine. In Medlin, this Court held that for the purposes of determining whether a defendant doctor is a "specialist" under subsection (c), "the trial court should look to whether the defendant `health care provider' is board certified in the specialty or discipline or school of practicethat covers the area of the alleged breach." 583 So.2d at 1294 (emphasis added). Dr. Roberts, who is not board-certified in emergency medicine, does not meet the first criterion. Therefore, because Roberts cannot satisfy all the requirements of subsection (c), he is not a "specialist."[2] *Page 794 
This Court further holds that because Dr. Roberts is not a specialist under subsection (c), § 6-5-548(e) of the Act does not apply to this case. In interpreting a statute, the court must determine and give effect to the intent of the legislature as provided in the text of the statute.Ex parte State Dep't of Revenue, 683 So.2d 980, 983 (Ala. 1996). "`Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'" Blue Cross Blue Shield v. Nielsen,714 So.2d 293, 296 (Ala. 1998) (quoting IMED Corp. v. Systems Eng'gAssocs. Corp., 602 So.2d 344, 346 (Ala. 1992)); see also DeKalb County LPGas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala. 1998).
Although § 6-5-548(e) is perhaps not well written, we do not conclude that it is ambiguous, so as to require judicial construction. At first blush, one may conclude that the last sentence of subsection (e) applies to all defendant health-care providers (specialists and nonspecialists). The phrase "in the event the defendant health care provider is certified by an appropriate American board or in a particular speciality and is practicing that specialty at the time of the alleged breach" (emphasis added) appears to apply broadly to health-care providers who are either board-certified or who are certified specialists who were practicing their speciality at the time of the alleged breach.
Yet, after reviewing the entire sentence, this Court concludes that the last sentence of subsection (e) requires a narrower application. The last phrase of the subsection provides that another health-care provider can testify as an expert witness about the breach of the standard of care "only if he or she is certified by the same American board in the same specialty" as the defendant health-care provider. If the Legislature intended for this legislation to have the broad application given it by the Court of Civil Appeals, the statute would read "certified by the same American board or in the same specialty." However, the Legislature chose not to include this language in the statute, and it is not for this Court to rewrite unambiguous legislation.[3] Thus, we hold that the last sentence of subsection (e) applies only to cases involving specialists.
The Court of Civil Appeals cited Johnson v. Price, 743 So.2d 436 (Ala. 1999), for the proposition that Dr. Longmore cannot testify against Dr. Roberts because the doctors are certified by different medical *Page 795 
boards. In Johnson, this Court, citing subsection (e), affirmed a trial court's interlocutory order striking expert medical testimony because the expert and the defendant doctor were certified by different boards. The defendant doctor was certified by the American Osteopathic Board of Surgery, while the expert doctor was certified by the American Board of Surgery. 743 So.2d at 437. This Court recognizes that it was not clear in its interpretation and application of subsection (e) in Johnson. We did not deem it necessary in that case to differentiate between specialists and nonspecialists, because the case involved a defendant doctor who was a specialist in surgery. However, we trust that our holding in this case with respect to that subsection explains our interpretation of the statute.
Therefore, because the last sentence of § 6-5-548(e) applies only to specialists and Dr. Roberts is not a specialist, the Court of Civil Appeals inappropriately held that Dr. Longmore cannot testify as an expert witness because he and Dr. Roberts are not certified by the same board.
 C. Can Dr. Longmore testify as an expert witness in this case?
Because Dr. Roberts does not qualify as a "specialist" under subsection (c), subsection (b) of § 6-5-548 applies and this Court must ascertain whether Dr. Longmore is a "similarly situated health care provider" under this subsection. As previously stated, subsection (b) provides that in order to testify against a health-care provider whose acts created the cause of action, a "similarly situated health care provider" is one who (1) is licensed to practice medicine in this state or another state, (2) is trained and experienced in the same discipline or school of practice, and (3) has practiced in the same discipline or school of practice during the year preceding the date of the alleged breach of the standard of care.
The record indicates that Dr. Longmore, who is a medical doctor, is licensed to practice medicine in New York. (Longmore's Curriculum Vitae, R. at 264.) Thus, he meets the first criterion under subsection (b). The second criterion requires that Dr. Longmore have training and experience in the same field. In Husby v. South Alabama Nursing Home, Inc.,712 So.2d 750 (Ala. 1998), this Court explained that subsection (b)(2) requires that a nonspecialist be trained in the practice in which the alleged breach occurred. 712 So.2d at 753. Thus, in order to testify about the breach of the standard of care in this case, Dr. Longmore would need to have had training and experience in emergency medicine. His curriculum vitae, which is part of the record, indicates that he has over 24 years' experience in emergency medicine. (R. at 264.) We hold that this is sufficient to meet the "training and experience" requirement of subsection (b). Finally, Dr. Longmore's curriculum vitae shows that one year before the date of the alleged breach in this case, Dr. Longmore was serving as the director of emergency services for Bronx Lebanon Hospital in New York City. (R. at 265.) Thus, he meets the third criterion under subsection (b).
Because Dr. Longmore meets the requirements of a "similarly situated health care provider," as defined in § 6-5-548(b), he can testify in this case as an expert witness about the alleged breach of the standard of care. Furthermore, we note that the Court of Civil Appeals should have addressed the remaining issue raised by Melanie in her brief on appeal to the Court of Civil Appeals — whether the trial court properly ruled on the proximate-cause issue. Therefore, we reverse the judgment of the Court of Civil Appeals and *Page 796 
remand this case for further proceedings consistent with this opinion and specifically for consideration of the proximate-cause issue.
REVERSED AND REMANDED.
Moore, C.J., and See, Lyons, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
[1] The sentence of the statute emphasized here was added by an amendment effective May 17, 1996. Adam died on December 19, 1995, and Melanie filed this action on October 24, 1997. Section 6-5-549.1(e) makes the amendment applicable to all actions pending on May 17, 1996, and toall actions filed thereafter. Thus, the amended version of subsection (e) applies to this case, because Melanie filed her case after May 17, 1996. See Johnson v. Price, 743 So.2d 436, 439 (Ala. 1999); McGlothern v.Eastern Shore Family Practice, 742 So.2d 173, 176-77 (Ala. 1999).
[2] We note that even if Dr. Roberts fulfilled the first criterion for determining whether he is a "specialist," he would not have been able to satisfy the other two criteria. The record indicates that Dr. Roberts received his osteopathic degree from the West Virginia School of Osteopathic Medicine in 1979. (Roberts's Supplemental Affidavit, R. at 378-79.) In 1980, he completed an osteopathic internship at Doctors Osteopathic Hospital in Erie, Pennsylvania. Id. Dr. Roberts served in a "fellowship-type program" in osteopathic family practice at West Allegheny Osteopathic Hospital from 1980 to 1987. Id. He was certified in 1989 by the American Osteopathic Board of Family Physicians. Id. Dr. Roberts has continually practiced family medicine in Elba since 1992.Id. However, nothing in the record explains his training and experience in emergency medicine. Therefore, we hold that this information is insufficient to meet the "training and experience" requirement of subsection (c).
Dr. Roberts also does not "hold himself out as a specialist." InMedlin, this Court interpreted this phrase to mean that the defendant health-care provider "has taken affirmative steps to present himself to the public as a specialist." 583 So.2d at 1295. The record does not contain any examples of Dr. Roberts's taking steps to present himself to the public as a specialist in emergency medicine; therefore, he does not meet the third criterion under subsection (c).
[3] In this case, the Court will exercise judicial restraint, recognizing that the separation-of-powers doctrine prohibits this Court from rewriting unambiguous statutes. Art. III, §§ 42, 43, Alabama Constitution of 1901. However, we suggest that a revision to §6-5-548(e) would clarify the reading of the statute. The omission of the word "or" in the phrase "certified by an appropriate American board or in a particular speciality" so that the phrase would read "certified by an appropriate American board in a particular specialty," would provide clarity to subsection (e).