I concur specially in this case, based on the following considerations and conclusions: *Page 442 
 "In Medlin v. Crosby, 583 So.2d 1290 (Ala. 1991), this Court established a three-step test for determining whether an expert is qualified to testify in a case brought under the Act. A court must determine (1) the standard of care the plaintiff alleges the defendant breached; (2) whether the defendant who is alleged to have breached the standard of care is a specialist in the area of care in which the breach is alleged to have occurred; and (3) whether the expert is qualified under the criteria set out in the relevant statute. 583 So.2d at 1293."
Ex parte Waddail, 827 So.2d 789, 793 (Ala. 2001).
As the main opinion notes, the defendants (hereinafter referred to collectively as "the Orthopaedic Group") concede that Linda Martin's proffered expert witness, Dr. Charles Clark, met the requirements for qualification as a similarly situated health-care provider prescribed by § 6-5-548, Ala. Code 1975. The standard of care Martin alleges the Orthopaedic Group breached was that to be exercised by an orthopaedic surgeon in timely diagnosing and treating a lumbar epidural hematoma and resulting cauda equina syndrome in a patient who has experienced a fall following lumbar surgery, based on the complaints, signs, and symptoms presented by the patient. Dr. Clark was not tendered as an expert to offer opinions critical of the performance by the defendant Dr. Edmund C. Dyas IV in performing the lumbar surgery in question or to offer any criticism of the treatment Martin received after the lumbar epidural hematoma and cauda equina syndrome were diagnosed. The parties agree, in the language ofEx parte Waddail, supra, that Dr. Dyas is "a specialist in the area of care in which the breach is alleged to have occurred," i.e., in evaluating the evolving complaints registered by, and the signs and symptoms exhibited and manifested by, a patient such as Martin.[10] Thus, Dr. Clark could testify as to the standard of care only if he qualified as a "similarly situated health care provider" under § 6-5-548(c).
Dr. Dyas is a board-certified orthopaedic surgeon; so also is Dr. Clark. The Orthopaedic Group's admission that Dr. Clark qualifies as a "similarly situated health care provider" under §6-5-548 (the record also independently corroborates that fact) establishes conclusively, for the purposes of this appeal, several important facts: that Dr. Clark is duly licensed by the appropriate regulatory board of this or another state (§6-5-548(c)(1)); that he is "trained and experienced in thesame specialty" (§ 6-5-548(c)(2)), i.e., the specialty "in the area of care in which the breach is alleged to have occurred"; and that he is certified by an appropriate American board in that specialty (§ 6-5-548(c)(3)) and has practiced in that specialty during the year preceding the date that the alleged breach of the standard of care occurred (§ 6-5-548(c)(4)). Furthermore, pursuant to § 6-5-548(e), the Orthopaedic Group's admission established that Dr. Dyas and Dr. Clark were "certified by the same American board in the same specialty."
The requirement in § 6-5-548(e) that an expert witness be certified by the same American board in the same specialty was declared by this Court in Johnson v. Price, 743 So.2d 436, 438
(Ala. 1999), to have special implications: *Page 443 
 "By adding this phrase [by a 1996 amendment to subsection (e)], the Legislature unequivocally stated that when litigants are establishing the standard of care for a health-care provider, the only instance in which a court can consider the expert testimony of another health-care provider is an instance in which the expert witness is certified by the very same organization that certified the defendant health-care provider; by this rule, the statute ensures that the expert witness will have the knowledge necessary to fully inform the jury of the standard of care to which the defendant is to be held."
(Emphasis added.) There is no contention that Dr. Dyas is board-certified in any orthopaedic subspecialty, to the extent such board certifications are available; rather, his board certification, and his "specialty," is in orthopaedic surgery.
The focus of the standard-of-care inquiry in this case is, under § 6-5-548(a), the "reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case," i.e., a case of examination, evaluation, and diagnosis based on complaints, signs, and symptoms such as were voiced and manifested by Martin, in the context of her recent postoperative history. The "area of care" in which the breach is alleged to have occurred is that of examining, evaluating, and diagnosing postoperative orthopaedic patients who present histories, complaints, signs, and symptoms paralleling Martin's. The specialty is that of a board-certified orthopaedic surgeon. As noted, by virtue of his qualification under § 6-5-548(c), Dr. Clark is deemed "trained and experienced" in that specialty and, by virtue of the interaction of § 6-5-548(c)(3) and (e), is recognized as being certified by the same American board and "in the same specialty" as Dr. Dyas. It is established that Dr. Clark had "practiced in this specialty" during the year preceding March 1998. § 6-5-548(c)(4). Thus, Dr. Clark would "have the knowledge necessary to fully inform the jury of the standard of care to which the defendant is to be held." Johnson, 743 So.2d at 438.
[10] Because of the disposition of this case as it relates to the trial court's disqualification of Dr. Clark as an expert witness regarding the standard of care applicable to Dr. Dyas, this Court need not consider Dr. Clark's qualification to testify as to the standard of care applicable to the defendant Dr. J. Michael Cockrell, who saw and evaluated Martin in the hospital emergency room on March 18, 1998.