LYONS, Justice.
Cedrick Webb was a physical-education teacher at Bellingrath Junior High School in Montgomery. The Montgomery County Board of Education (“the Board”) canceled Webb’s employment contract in February 2007. Webb contested the cancellation, and the matter was heard before a hearing officer who reinstated Webb’s employment yet ordered discipline in the form of a temporary suspension. The Board appealed the hearing officer’s decision to the Court of Civil Appeals; that court reversed the decision and remanded the cause. Montgomery County Bd. of Educ. v. Webb, 53 So.3d 96 (Ala.Civ.App.2008). Webb filed an application for a rehearing, which the Court of Civil Appeals overruled. Webb then petitioned this Court for a writ of certiorari, and we granted certiorari review. We reverse and remand.

Statutory Context

The facts and procedural history of this case are best understood against the background of the Alabama Teacher Tenure Act, § 16-24-1 et seq., Ala.Code 1975, as amended by Act No. 2004-566, Ala. Acts 2004. Section 16-24-2(a) provides:
“Any teacher in the public schools who shall meet the following requirements shall attain continuing service status: Such teacher shall have served under contract as a teacher in the same county or city school system for three consecutive school years and shall thereafter be reemployed in such county or city school system the succeeding school year.”
It is undisputed that Webb had attained continuing-service status under § 16-24-2(a).
Sections 16-24-8 to -10, Ala.Code 1975, govern the cancellation of employment contracts by the employing board of education for teachers who have attained continuing-service status. Section 16-24-8 provides that an employment contract of a teacher who has attained continuing-service status may be canceled only for the following reasons: “incompetency, insubordination, neglect of duty, immorality, failure to perform duties in a satisfactory manner, justifiable decrease in the number of teaching positions or other good and just cause.” Employment contracts may not be canceled “for political or personal reasons.” § 16-24-8.
Section 16-24-9 establishes the procedure for cancellation of an employment contract for one of the reasons in § 16-24-8. It provides that the teacher is to receive written notice from the superintendent stating the superintendent’s intent to recommend cancellation and the reasons and factual basis for the recommendation of cancellation. Once notified, the teacher may obtain a conference with the employing board. If the board votes to cancel the teacher’s employment contract, the teacher is entitled to written notice of the cancellation. The teacher then has 15 days after *124 receipt of the notice to contest the board’s decision. If the teacher does so, he or she is then entitled to have the matter considered by a hearing officer.
Section 16-24-10(a) grants the hearing officer specific powers and responsibilities. Pertinent to this action, § 16-24-10(a) provides:
“The hearing officer shall conduct a de novo hearing and shall render a decision based on the evidence and/or information submitted to the hearing officer. The hearing officer shall determine which of the following actions should be taken relative to the employee: Cancellation of the employment contract, a suspension of the employee, with or without pay, a reprimand, other disciplinary action, or no action against the employee. The hearing officer shall render a written decision, with findings of fact and conclusions of law, within 30 days after its hearing.”
(Emphasis added.) Section 16-24-20(c), Ala.Code 1975, further provides:
“During all hearings conducted before a hearing officer pursuant to this article, the hearing officer may consider the employment history of the teacher, including, but not limited to, matters occurring in previous years. Testimony and exhibits shall be admitted into evidence at the discretion of the hearing officer. The hearing officer shall also have the authority and discretion to exclude or limit unnecessary or cumulative evidence.”
(Emphasis added.)
Section 16-24-10(b) establishes the procedures for an appeal from the hearing officer’s decision. That section states, in relevant part:
“All appeals of a final decision of the hearing officer shall lie with the Alabama Court of Civil Appeals.... The Court of Civil Appeals shall have discretion to refuse to hear appeals of final decisions of a hearing officer pursuant to this article.... The decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of this article.”

Factual Background and Procedural History

On May 3, 2006, Webb disciplined two students who were accused of throwing rocks and scissors at a third student. The details of the events that occurred during Webb’s disciplining of the two students are disputed. One of the two students accused Webb of cursing at him and throwing water on his legs, soaking his pants; the other student supported that accusation. Webb denied cursing but admitted throwing water from his drinking cup to the ground at the student’s side; Webb denied that the student got wet. The students submitted written statements, as did Webb, the principal, and a teacher who had witnessed some of the events. On May 4, 2006, Webb was placed on paid administrative leave pending the outcome of an investigation into the incident.
Webb remained on administrative leave through the end of the 2005-2006 school year and the beginning of the 2006-2007 school year. On January 26, 2007, in compliance with § 16-24-8, Superintendent Linda Robinson wrote Webb and advised him that she intended to recommend that the Board cancel his contract. Robinson advised Webb that her recommendation was based on the following grounds: “insubordination, neglect of duty, failure to perform duties in a satisfactory manner, and other good and just cause.” Robinson specified two reasons supporting these *125 grounds. The first, “Charge I,” related to the May 3, 2006, incident; the second, “Charge II,” related to 11 disciplinary actions in Webb’s employment history between January 2002 and February 2006.
Webb contested the charges on January 29, 2007. In compliance with the procedures established by § 16-24-9, he requested and was granted a conference with the Board. The record on appeal does not include a written record of the conference or of the Board’s decision; however, it is undisputed that on February 20, 2007, the Board voted to cancel Webb’s contract. On February 28, 2007, Webb contested the Board’s decision and requested a hearing pursuant to § 16-24-9. The parties selected a hearing officer who “conduct[ed] a de novo hearing,” as required by § 16-24-10(a), on July 25, 26, and 27, 2007.
Before the hearing, the Board filed a written motion in limine seeking to preclude Webb from presenting evidence related to the events underlying the disciplinary actions identified in charge II.[1] When orally arguing its motion in limine immediately before the hearing began, the Board asked that the hearing officer reserve his ruling on the motion and allow the Board to object to specific evidence as Webb offered it. Counsel for the Board stated: “We do acknowledge that Mr. Webb is entitled to cross-examine and go into these matters because these matters were the basis upon which the Board made its decision to cancel the contract. But we’re saying that that’s not unfettered” and that Webb should not be allowed to introduce evidence regarding “extraneous issues.” Counsel further explained that Webb had an opportunity to respond to the disciplinary actions at the time they occurred and the Board “fe[lt] that the evidence should be limited to that but with some latitude to explore that.” Per the Board’s request, the hearing officer reserved his ruling on the Board’s motion.
The parties subsequently submitted testimony and documentary evidence regarding charges I and II. In light of the narrow issue raised in Webb’s petition to this Court, we need not describe the evidence presented at the hearing in great detail. However, we find the following regarding the parties’ presentation of evidence relating to charge II relevant to our consideration of the issues.
The Board presented documentary evidence from Webb’s personnel file regarding each of the 11 disciplinary actions underlying charge II. This evidence varied for each disciplinary action but, in the aggregate, included letters of reprimand, investigation summaries, and written witness statements. The Board also solicited testimony from two of the principals under whom Webb had worked when the disciplinary actions were taken. The principals, contrary to the conclusion reached by the Court of Civil Appeals,[2] testified regarding the details of the events that led to the disciplinary actions, including their investigations into and personal knowledge of those events. Notably, at one point during the hearing, the Board attempted to solicit evidence regarding the substance of a complaint that resulted in a disciplinary action against Webb in October 2005. When Webb raised a hearsay objection, counsel for the Board argued that the evidence should be admitted, explaining *126 that the Board’s case against Webb was “about the complaint” and stating: “I don’t know how we can go forward without showing what the complaint was.... I’m just trying to understand how can we talk about the complaint other than just say he got a ten-day suspension, and that’s it.” Counsel for the Board explained, referring to “an employee’s past performance”:
“[A] board may appropriately consider those things.... [Tjhey look at all of this history, all of these reprimands and all of these suspensions and all of this conduct and all the complaints. All of that went into the decision that the Board made that this employee needs to be cancelled.... And it is not necessarily — whether it proves or does not prove whether the event happened.... But without the Board being able to show the basis for this recommendation, it simply — it’s just simply in the record that he got a ten-day suspension, and it certainly goes well beyond that in terms of what happened.”
The hearing officer sustained Webb’s hearsay objection, but he allowed the Board to present testimony regarding the facts underlying the disciplinary action.
Webb offered evidence to defend, on the merits, some of the 11 disciplinary actions underlying charge II. He also offered evidence to show that some of the disciplinary actions were the result of personal bias against him.[3] First, Webb presented his own testimony regarding the events, denying the substance of the principals’ testimony and explaining his recollection of what had happened to result in those disciplinary actions. He also admitted that he accepted many of the 11 disciplinary actions without contest. The Board did not raise any objections to the substance of Webb’s testimony. Webb then offered documents to substantiate his testimony and testimony from other witnesses regarding the events underlying the disciplinary actions. The Board moved to exclude this evidence “as being offered to prove the truth of the matters asserted back then.” The Board, through counsel, argued:
“[W]e have objections to live witnesses commenting about incidents and the truth of whether or not they occurred primarily because, again, they are not relevant to unprove whether or not the suspensions were received, the warnings were received. All those are things and facts that have already occurred in the past. And what Mr. Webb is attempting to do is to try to unprove things that have already occurred upon which he has received disciplinary actions for, which we feel is not appropriate to go into factual details of about what happened and to try to undo those because the suspensions have been acted upon.... And so we object to that testimony and move to exclude any witness that’s put on to testify about factual matters about which Mr. Webb has already been suspended about.”
The Board explained that its offer of evidence regarding the events underlying the disciplinary actions was only to show the “basis” of the disciplinary actions, and “not necessarily to show the truth of the matters that were asserted.”
*127 On January 15, 2008, the hearing officer issued a detailed decision.[4] The hearing officer denied the Board’s motion in limine, finding: “To not allow these evidentiary submissions and testimony to be introduced into the hearing would create an undue burden to the presentation of [Webb’s] case, and would be a violation of the Alabama Code.” The hearing officer made detailed findings regarding charge I and the disciplinary actions underlying charge II. Ultimately, he ordered that Webb be reinstated to his position “at a school of the Board’s choice” but that Webb be temporarily suspended without pay as a result of his actions on May 3, 2006. The hearing officer also ordered that 9 of the 11 disciplinary actions underlying charge II be expunged from Webb’s personnel file either because they did not warrant disciplinary action or because they resulted from personal animus against Webb.
The Board appealed the hearing officer’s decision to the Court of Civil Appeals pursuant to § 16-24-10(b). The Court of Civil Appeals exercised the discretion given to it by that section and agreed to hear the appeal. The Court of Civil Appeals then reversed the hearing officer’s decision. Webb filed an application for a rehearing, which the Court of Civil Appeals denied. Webb then petitioned this Court for a writ of certiorari. In petitioning for certiorari review, Webb relied upon the ground that the case presented a question of first impression, Rule 39(a)(1)(C), Ala. R.App. P. Webb identified the question, relating to the interpretation of § 16-24-20(c), stating: “In a proposed-termination [of employment] case, where the employer relies in part on events that already occurred in prior years, and that have not been the subject of any prior hearing, is the hearing officer allowed to hear evidence and make de novo findings of fact about those events?” Webb also relied upon the ground of conflict, Rule 39(a)(1)(D), Ala. R.App. P. He contended that the Court of Civil Appeals’ conclusion that the Board’s notice of termination was timely for purposes of cancellation pursuant to § 16-24-12, Ala.Code 1975, conflicted with prior decisions of this Court. We granted cer-tiorari review of both issues.

Standard of Review

“On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.” Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala.1996). Section 16-24-10(b) establishes the standard of review for appeals from a hearing officer’s decision under that section, stating that the hearing officer’s decision “shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious.” This Court has stated: “The Court of Civil Appeals does have the authority to reverse the decision of the hearing officer for failing to follow the applicable law, because the failure to follow the applicable law renders the hearing officer’s decision arbitrary and capricious.” Ex parte Wilson, 984 So.2d at 1170.

Analysis

Webb has raised an issue of first impression regarding the interpretation of the following language of § 16-24-20(c): “[T]he hearing officer may consider the employment history of the teacher, including, but not limited to, matters occurring *128 in previous years.” We must determine whether this language grants a hearing officer authority simply to consider a teacher’s employment records — including prior disciplinary actions and evidence related to the factual basis for and contemporaneously asserted defenses to those actions — or whether the hearing officer may receive evidence of and consider events in a teacher’s past employment — both good and bad — beyond what is reflected in the teacher’s employment records. We must also consider whether the hearing officer may alter and expunge a disciplinary action in a teacher’s past employment.
“Our inquiry is governed by settled principles of statutory construction:
“ ‘ “The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute. League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). In this ascertainment, we must look to the entire Act instead of isolated phrases or clauses; Opinion of the Justices, 264 Ala. 176, 85 So.2d 391 (1956).”
“ ‘Darks Dairy, Inc. v. Alabama Dairy Comm’n, 367 So.2d 1378, 1380 (Ala.1979) (emphasis added). To discern the legislative intent, the Court must first look to the language of the statute. If, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, there is no room for judicial construction. Ex parte Waddail, 827 So.2d 789, 794 (Ala.2001). If a literal construction would produce an absurd and unjust result that is clearly inconsistent with the purpose and policy of the statute, such a construction is to be avoided. Ex parte Meeks, 682 So.2d 423 (Ala.1996).’
“City of Bessemer v. McClain, 957 So.2d 1061, 1074-75 (Ala.2006).”
Bright v. Calhoun, 988 So.2d 492, 497-98 (Ala.2008). Furthermore, this Court has stated that its “role is not to displace the legislature by amending statutes to make them express what we think the legislature should have done. Nor is it this Court’s role to assume the legislative prerogative to correct defective legislation or amend statutes.” Siegelman v. Chase Manhattan Bank (USA), Nat’l Ass’n, 575 So.2d 1041, 1051 (Ala.1991).
The Court of Civil Appeals determined that, in considering Webb’s employment history under § 16-24-20(c), the hearing officer erred in admitting, considering, and making determinations regarding matters outside Webb’s personnel record. The court stated:
“[W]e think that the legislature intended that a teacher’s employment history, if considered at all by a hearing officer, be regarded as just that — past history, or historical fact — and, therefore, not open to a trial de novo, but available to be weighed either in support of or in mitigation of the penalty imposed by the Board.
[[Image here]]
“We conclude that when the legislature provided in § 16-24-20(c) that ‘[tjestimony and exhibits shall be admitted into evidence at the discretion of the hearing officer,’ it meant to give the hearing officer the discretion to consider testimony and documentary evidence indicating the basis for the previous disciplinary action against the teacher as well as any contemporaneous response or defense that the teacher made to the disciplinary action. We also conclude that the legislature intended that such evidence would normally be limited to the materials contained in the teacher’s personnel file....
*129 [[Image here]]
“We hold that § 16-24-20(c) does not authorize a trial de novo of a teacher’s previous disciplinary actions. Nor does it allow a teacher to offer an explanation of or to assert a defense to a previous disciplinary action that, the record demonstrates, the teacher did not offer or assert at the time he or she was originally disciplined.”
53 So.3d at 104-07 (emphasis added). In its brief to this Court, the Board relies heavily on the Court of Civil Appeals’ reasoning.
We first consider whether the hearing officer in a teacher-employment-termination proceeding may admit and consider evidence outside the teacher’s personnel records. To support the conclusion that the phrase “employment history” in § 16-24-20(c) is limited to the teacher’s personnel records, the Court of Civil Appeals cited § 16-22-14, Ala.Code 1975, which governs the maintenance of personnel records by county boards of education. That section permits teachers to respond to materials in their personnel files, § 16-22-14(c); it requires that certain materials pertaining to a teacher’s work performance be reduced to writing and “may” be included in personnel files, § 16-22-14(e); and it requires that personnel files be made available to hearing officers, § 16-22-14(g)(4). Webb argues that although § 16-22-14(c) permits a teacher to respond to materials in the teacher’s personnel records, it does not require that the teacher do so lest the teacher be barred from defending against the material during any subsequent adverse employment action. Webb likewise argues that nothing in the legislature’s granting of authority to the hearing officer to view a teacher’s personnel records restricts the officer’s consideration to the information contained in those records. We agree. By its plain language, nothing in § 16-22-14 restricts the phrase “employment history” in § 16-24-20(c) to the documents in the teacher’s employment record.
The Court of Civil Appeals also relied on Ex parte Dunn, 962 So.2d 814 (Ala.2007), in which this Court stated: “‘The [Alabama Teacher Tenure] Act allowed the hearing officer to consider the “mitigating factors” evident in [the teacher’s] employment history.’” 53 So.3d at 106 (quoting Dunn, 962 So.2d at 824). In Dunn, the employing board canceled the contract of “Marion Dunn, a tenured science teacher and ... the head varsity basketball coach.” 962 So.2d .at 815. Pursuant to § 16-24-10, Dunn obtained a hearing before a hearing officer who reinstated his employment and fashioned a different sanction. 962 So.2d at 815-16. In doing so, the hearing officer considered evidence of Dunn’s employment history, including “ ‘his ... employment record and other evidence,’ ” such as testimony from witnesses regarding his influence on his students’ lives and his “assets [as] a teacher.” 962 So.2d at 822 (emphasis added). In considering Dunn’s employment history, therefore, the hearing officer considered evidence beyond his employment record, including witness testimony both favorable and unfavorable to Dunn. The employing board appealed the hearing officer’s decision to the Court of Civil Appeals, which determined that the hearing officer’s decision was arbitrary and capricious. 962 So.2d at 816.[5] Dunn petitioned this Court for a writ of certiorari, and this Court granted certiorari review. Id.
Recognizing the authority granted to a hearing officer under § 16-24-10, this *130 Court reversed the Court of Civil Appeals’ decision and remanded the case. Specifically, this Court discussed the hearing officer’s authority to weigh the evidence and to fashion an appropriate disciplinary action, stating:
“Section 16-24-10(a) gives the hearing officer the authority to determine the appropriate disciplinary action. In exercising this authority, ‘the hearing officer may consider the employment history of the teacher, including, but not limited to, matters occurring in previous years. ’ § 16-2Jp-20(c). In this case, the hearing officer’s decision clearly reflects his careful consideration of Dunn’s entire ‘employment history, ’ including the good as well as the indefensible. Only after doing so did the experienced hearing officer determine what he considered to be the appropriate sanction for Dunn’s misconduct. Although we may disagree with the wisdom of the decision, we may not substitute our judgment for that of the hearing officer.”
962 So.2d at 823-24 (emphasis added).
In response to an argument by the employing board in Dunn, this Court stated:
“The Board argues that the ‘hearing officer ... was arbitrary and capricious in placing too much emphasis on mitigating factors, considering the egregious nature of the misconduct itself.’ Board’s brief, at 24. However, it is the hearing officer’s responsibility to weigh the evidence, and this Court may not substitute its judgment for that of the hearing officer. The [Alabama Teacher Tenure] Act allowed the hearing officer to consider the ‘mitigating factors’ evident in Dunn’s employment history, both as a coach and as a teacher. We will not second-guess his decision.”
962 So.2d at 824 (emphasis added). In so stating, this Court in Dunn did not address the limits of the hearing officer’s authority to admit and consider evidence. Instead, this Court discussed the employing board’s argument, emphasizing the hearing officer’s discretion under the Alabama Teacher Tenure Act to consider evidence regarding the teacher’s past employment. Specifically, this Court did not limit the hearing officer’s consideration to documents within the teacher’s employment record; the hearing officer in Dunn clearly did not so limit himself. Nor did this Court imply that the documents and testimony explaining the materials in the file setting forth a teacher’s employment history be considered only as “mitigating factors” weighing in favor of or against cancellation of the teacher’s employment contract. Indeed, it is apparent that the hearing officer in Dunn considered and made determinations regarding conflicting evidence of Dunn’s employment history. We, therefore, find no support in Dunn for the proposition that the phrase “employment history” in § 16-24-20(c) is limited as the Court of Civil Appeals and the Board in this action suggest.
Based on the foregoing, we find nothing in the language of §§ 16-24-10, 16-24-19 (discussed infra), or 16-24-20 that limits the hearing officer’s discretion in conducting a hearing under § 16-24-10 to considering evidence of the basis for and contemporaneously asserted defenses to disciplinary actions against the teacher. We likewise find nothing in the statutory language indicating a legislative intent to limit the hearing officer’s discretion to the admission of documents contained in the teacher’s personnel records. Had the legislature intended to confine the hearing officer’s review to a cold record it could have very easily done so. Instead, the statutory language reflects a legislative intent to grant broad authority to the hearing officer regarding the admission, exclusion, and consideration of evidence, *131 including evidence regarding the teacher’s employment history, both good and bad. We will not substitute our judgment for that of the legislature and impose such limitations.
We acknowledge the conflicting policy arguments regarding the interpretation of § 16-24-20(e). The Court of Civil Appeals reasoned that allowing a teacher to raise new defenses to prior disciplinary actions, as Webb did, would result in protracted litigation regarding the cancellation of the teacher’s employment contract. Under this scenario, teachers would unnecessarily and unfairly extend the hearing process by presenting testimony regarding events previously adjudicated and long past. Webb argues that the Court of Civil Appeals’ construction of § 16-24-20(c) will itself result in unnecessary litigation. Under Webb’s scenario, teachers will defend to the utmost every minor disciplinary action, which may otherwise have been accepted without contest, thus creating unnecessary litigation and disharmony between teachers and administrators. Also, according to Webb, if the evidence were limited to that contained in the personnel record, teachers would not be allowed to present even favorable testimony regarding their employment history if it relates to matters outside the personnel record. Evaluation of the merits of these competing considerations, however, is a matter for the legislature.
Regarding the hearing officer’s decision to alter and expunge disciplinary actions in Webb’s past employment, the Court of Civil Appeals relied on § 16-24-19, Ala.Code 1975, which grants hearing officers the authority to consider contests of minor suspensions only on “written submissions.” The Court of Civil Appeals reasoned that, because the legislature provided for a hearing on written submissions only for minor suspensions, it could not “imagine that the legislature intended to provide, in § 16-24-20(e), for a trial de novo of past disciplinary actions.” 53 So.3d at 106. The Court of Civil Appeals also stated that its decision was grounded in “fundamental fairness” because, it reasoned, the prior disciplinary actions had already been resolved. 53 So.3d at 107.
Webb argues that disparity between the hearing on written submissions authorized by § 16-24-19 and the de novo hearing authorized by § 16-24-10 simply reflects “the difference in the stakes,” i.e., the loss of a few days’ pay versus the cancellation of an employment contract, and does not preclude a hearing officer’s de novo determination regarding past events at a hearing on the cancellation of a teacher’s contract. Webb further contends that, by relying on the disciplinary actions and the facts underlying them as a basis for his termination, the Board put those events at issue.
Based on the plain language of § 16-24-20(c), we conclude that the hearing officer had authority to “consider the employment history of the teacher.” That language does not, however, grant the hearing officer authority, as part of the determination whether a teacher’s employment was properly terminated, to alter prior disciplinary actions or to expunge such actions from the teacher’s employment records. We agree that the hearing officer exceeded his authority under § 16-24-20(c) by altering the prior disciplinary actions against Webb and ordering that his employment records be expunged.

Conclusion

Based on the foregoing, we conclude that the hearing officer did not err in admitting and considering events in Webb’s employment history, including those events related to the 11 disciplinary actions underlying charge II. However, we conclude that the hearing officer erred in *132 altering Webb’s employment history as it concerns the prior disciplinary actions. We, therefore, reverse the Court of Civil Appeals’ decision and instruct that court to remand the cause for the hearing officer to vacate those parts of his order altering Webb’s past disciplinary actions and expunging Webb’s employment records.[6]
REVERSED AND REMANDED.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in part and dissents in part.

. The motion is not included in the record on appeal; however, the hearing officer’s order describes it in detail.

. The Court of Civil Appeals stated that the Board only had the principals describe their roles in the investigations and authenticate documents and did not present witness testimony regarding the events giving rise to the disciplinary actions. However, an examination of the record reflects otherwise.

. See Ex parte Wilson, 984 So.2d 1161, 1173 (Ala.2007) (Lyons, J., concurring in part and concurring in the result) ("[E]vidence related to 'like discipline of co-employees' and 'forewarning of possible or probable consequences of the employee's conduct' could be germane to an affirmative defense of personal or political motivation pleaded with proper notice to the board." (emphasis added)). However, the Board did not object to evidence of personal bias on the ground that such evidence is relevant only to an affirmative defense that had not been pleaded in Webb's response to the charges.

. The hearing officer's order references the parties’ post-hearing briefs; however, those briefs do not appear in the record on appeal.

. The employing board's appeal in Dunn did not relate to the hearing officer's admission of this evidence.

.Webb, as previously noted, alleged conflict with precedent as an alternative basis for certiorari jurisdiction, contending that the Court of Civil Appeals' conclusion that the Board’s notice of termination was timely for purposes of cancellation pursuant to § 16-24-12, Ala.Code 1975, conflicted with prior decisions of this Court. Webb argues in his brief that we need not consider this issue if we rule in his favor as to the question of first impression because it is apparent that the hearing officer determined that Webb's May 3, 2006, actions did not warrant termination and imposed discipline in the form of a temporary suspension. We treat this statement as a conditional withdrawal of this ground. Our resolution of the question of first impression in his favor satisfies the condition, and, the issue having been withdrawn, we do not decide it.