THOMPSON, Presiding Judge,
concurring in part and dissenting in part.
I disagree with the holding in the majority opinion that § 14-8-6, Ala.Code 1975, caps the amount that may be withheld from a work-release inmate’s earnings, “ ‘whether it is for costs of confinement, costs of work release, or any other fee or expense.’ ” 74 So.3d at 8 (quoting trial court’s order).
Section 14-8-6 provides as follows:
“The employer of an inmate involved in work release shall pay the inmate’s wages directly to the Department of Corrections. The department may adopt regulations concerning the disbursement of any earnings of the inmates involved in work release. The department is authorized to withhold from an inmate’s earnings the cost incident to the inmate’s confinement as the department shall deem appropriate and reasonable. In no event shall the withheld earnings exceed 40 percent of the earnings of the inmate. After all expenses have been deducted by the department, the remainder of the inmate’s earnings shall be credited to his or her account with the department. Upon his or her release all moneys being held by the department shall be paid over to the inmate.”
(Emphasis added.)
As the majority points out, it is a rule of statutory construction that ‘“[t]o determine legislative intent, the Court must first look to the language of the statute. If, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, then there is no room for judicial construction.’ ” 74 So.3d at 15 (quoting Fluker v. Wolff, 46 So.3d 942, 953 (Ala.2010), citing in turn Ex parte Waddail, 827 So.2d 789, 794 (Ala.2001)). Furthermore,
“in interpreting a statute, a court accepts an administrative interpretation of the statute by the agency charged with its administration, if that interpretation is reasonable.... Absent a compelling reason not to do so, a court will give great weight to an agency’s interpretations of a statute and will consider them persuasive.”
State v. Pettaway, 794 So.2d 1153, 1157 (Ala.Civ.App.2001).
I believe that the majority’s interpretation of § 14-8-6 is too broad. I do not read the statute as placing an absolute cap on the amount that may be collected from the earnings of work-release inmates, even for extraordinary services such as transportation and laundry services that the Department of Corrections (“the department”) may provide to those inmates taking part in the work-release program. Instead, the sentence, “In no event shall the withheld earnings exceed 40 percent of the earnings of the inmate,” refers to the amount that can be withheld to defray the costs incident to confinement.
The usual and ordinary meaning of “confine” is “to hold within a location,” or to imprison. Merriam-Webster’s Collegiate Dictionary 261 (11th ed.2003). “Confinement” has also been defined as the “[sjtate of being confined; shut in; imprisoned; detention in penal institution.” Black’s Law Dictionary 298 (6th ed.1990). An inmate who is qualified for work release *24 and who chooses to take part in the work-release program is not confined within the penal institution while he is on the job. The department provides relatively inexpensive transportation for work-release inmates to and from their jobs; however, that transportation is not incident to the inmate’s confinement. Similarly, the fees an inmate incurs for laundry services for clothes worn on work release, as opposed to prison uniforms, are not incident to confinement.
The department, the State agency charged with carrying out § 14-8-6, has interpreted the statute to allow collection of up to 40% of a work-release inmate’s earnings to defray the costs incident to confinement. However, costs that an inmate incurs for work release may be assessed in addition to the costs of confinement. The department’s interpretation of § 14-8-6 is reasonable, and I do not believe that the plaintiffs provided a compelling reason for this court to reject that interpretation. Indeed, a federal district judge also shares the department’s interpretation of the statute. In Ambers v. Allen, Case No. 5:08-CV-0823-CLS-PWG (N.D.Ala.2010) (unpublished), released on March 18, 2010, the United States District Court for the Northern District of Alabama reached the same conclusion. Although decisions of the United States district courts are not binding upon this court, they are persuasive authority. Am-bers dealt with whether the department properly withdrew money from an inmate’s Prisoner Money On Deposit (“PMOD”) account to pay for his transportation to and from his work-release job. In that case, the district court adopted the report of the magistrate judge, which found that “[mjedical, transportation, and court fees are not costs incident to confinement, rather they are the living expenses incurred by the inmate himself and paid out of his PMOD [account] when he authorizes the payment.”
People who are not incarcerated must pay their own costs for transportation to and from work. Further, people who are not incarcerated pay their own laundry bills and buy their own toiletries. Simply because one is on work release does not prevent one from having to pay the costs of everyday life. A work-release inmate should not be exempt from the costs of everyday goods and services merely because he or she is working as part of a work-release program. Department Commissioner Richard Allen testified that participation in the work-release program is voluntary. If an inmate does not wish to pay for goods and services he or she uses while on work release, he or she can decline to take part in the program.
For these reasons, I believe that the trial court erred in determining that the cost of work release or any other fee or expense is included within the cost of the confinement of an inmate and that § 14-8-6 precludes the department from charging inmates for costs the inmates incur in connection with work release once the 40% cap on costs of confinement has been reached. Therefore, I would reverse that portion of the judgment placing an absolute cap of 40% on the amount the department may withhold from an inmate’s work-release earnings.
Because I find that the department may collect transportation and laundry costs incurred by an inmate on work release over and above the 40% cap on collecting costs incident to confinement, I also disagree that the contract the inmate signs authorizing the department to withhold those costs is void.
The document at issue, a copy of which was attached to Commissioner Allen’s deposition that was submitted into evidence, sets forth at least some of the rules an inmate must abide by if he or she wishes *25 to participate in the work-release program, including the amount he or she will pay for transportation and the amount of his or her earnings the department will withhold to defray the costs of the inmate’s confinement. Those rules are set forth in the department’s regulations; they are not negotiable. An inmate does not have the option of picking and choosing the rules of the program with which he or she agrees. In signing the agreement, the inmates are agreeing to abide by the rules. Participation in the work-release program is voluntary, and if an inmate does not like the program’s rules, he or she is not required to take part in the program.
For the reasons set forth above, I must respectfully dissent from those portions of the main opinion holding that § 14-8-6 provides an absolute cap on the amount of money the department is authorized to withhold from a work-release inmate’s earnings and holding void the document work-release inmates sign authorizing the department to withhold certain costs related to work release. Otherwise, I concur in the main opinion.
PITTMAN, J., concurs.